2003 UT 38

**UTAH GOLF ASSOCIATION, INC., a Utah non-profit corporation, Plaintiff, Appellee, and Cross–Appellant,**

v.

**The CITY OF NORTH SALT LAKE, Utah, a Utah municipal corporation; and the City of North Salt Lake, Utah, Municipal Building Authority, a Utah non-profit corporation, Defendants, Appellants, and Cross–Appellees.**

No. 20010928.

Supreme Court of Utah.

Sept. 16, 2003.

Rehearing Denied Oct. 29, 2003.

Lester A. Perry, Salt Lake City, for plaintiff.

Larry S. Jenkins, Salt Lake City, for defendants.

WILKINS, Justice:

¶ 1 The City of North Salt Lake ("the City") appeals the trial court's decision to grant partial summary judgment to the Utah Golf Association ("the UGA") on the issue of liability under a contract, and the court's denial of the City's motion for summary judgment and reconsideration. The City contends that the court failed to consider controlling Utah law which generally does not require a vendor of real property to have clear and marketable title to the property until the time to convey the property has arrived; and controlling law which restricts a municipality's disposal of public property as a gift, which rendered the contract ultra vires and unenforceable. Also, the City contends that the trial court mistakenly construed the twenty-year lease extension as an unenforceable "agreement to agree" rather than as a valid condition precedent.

¶ 2 The UGA cross-appeals a decision by the trial court denying the UGA damages based on moving costs. The UGA argues that it did not have a duty to mitigate its damages by entering into a twenty-year lease with the City.

## BACKGROUND

¶ 3 On March 31, 1992, the City and the UGA entered into an "Office Use Agreement" ("the Agreement") in which the City agreed to construct approximately 2,424 square feet of office space in the clubhouse of the City's Eaglewood Golf Course, and which the UGA agreed to lease for five years. The annual rent for the office space was set at $30,300. As a further inducement for the UGA to enter into the Agreement, a "First Addendum to the Office Use Agreement" ("the First Addendum") granted to the UGA several incentives. These included 888 square feet of space for the Utah Golf Hall of Fame, exclusive use of the golf course and golf carts for two days each year of the Agreement (and all green fees collected on those days), and exclusive access to the driving range for two hours per week (and all fees collected during that period). Most significantly, the City promised that the Municipal Building Authority ("the Building Authority") would convey a piece of property ("the UGA Property") to the UGA, upon which the UGA could construct its permanent headquarters at the end of the original lease period. The First Addendum provided that if the UGA elected not to build its permanent headquarters on the UGA Property, the UGA could receive the proceeds from the sale of the UGA Property on the condition that the UGA enter into a twenty-year use agreement for the premises, "with a provision for an annual three percent (3%) increase in the base user fee for the extended term." The First Addendum also provided a right of first refusal on the UGA Property to the Building Authority, and it reserved to the City the right to "approve the development and architectural plans of the third party buyer with respect to the UGA Property."

¶ 4 In January 1994, the UGA and the City amended the Agreement and created a "Second Addendum to the Office Use Agreement" ("the Second Addendum"). The Second Addendum reduced the amount of space the UGA agreed to lease to 2,178 square feet. The rent was lowered to $25,000. The 888 square feet of space for the Utah Golf Hall of Fame was reduced to 710 square feet. Also, the driving range fees collected by the UGA during its exclusive two hours per week were reduced by half. Most significantly, a change was made to the condition regarding the UGA Property. The Second Addendum provided that if the UGA elected not to build its permanent headquarters on the UGA Property, the UGA would be entitled to the proceeds of the sale of the UGA Property only if it first entered into a twenty-year use agreement "upon such terms and conditions agreed upon between the parties on or before the expiration of the original five (5) year Agreement Term."

¶ 5 The original five-year agreement term expired in January 1999. At that time, the UGA had not elected to build its permanent headquarters on the UGA Property, nor had it entered into a twenty-year lease for the office space. The City allowed the UGA to continue to rent the office space on a month-to-month basis while the two parties continued to negotiate for a new long-term lease. An agreement was never reached, and in December of 1999, the City evicted the UGA.

¶ 6 On January 21, 2000, the UGA filed a complaint against the City alleging breach of contract. The UGA argued that a use restriction on the City's title to the UGA Property, which the City failed to remove, constituted a breach of the Agreement. The use restriction required the UGA Property to be used only for an addition to the golf course or as the UGA's headquarters.

¶ 7 In a motion for partial summary judgment by the UGA, the trial court found that the use restriction prevented anyone but the City or the UGA from purchasing the UGA Property. The court determined that the City was "unable to lift this restriction" and thus, the City had committed an anticipatory breach of the Agreement. The court determined that because of the City's anticipatory breach, the UGA was excused from entering into a long-term lease with the City. The court ruled that the Second Addendum was an unenforceable "agreement to agree" and, therefore, the First Addendum was controlling. The court concluded that, under the First Addendum, the UGA would have performed if the City had not breached the Agreement.

¶ 8 The City filed a motion for summary judgment and reconsideration of the partial summary judgment ruling, arguing that the trial court failed to consider controlling Utah law in its prior ruling. The City alleged that the contract conveying the UGA Property to the UGA was unenforceable because Utah law prohibits a municipality from transferring public property for less than a present benefit that represents fair market value. The City also argued that the trial court did not consider Utah law which holds that a seller need not have unencumbered title to property until the time for conveyance arrives. The City then presented evidence that the developer would have been willing to lift the deed restriction if the City had exercised its right of first refusal. The UGA moved to strike that evidence, claiming that it should have been raised previously. The court agreed and granted the UGA's motion to strike the evidence. The court also denied the City's motion for summary judgment and reconsideration, concluding that the City had ample opportunity to raise the issues in its response to the UGA's motion for partial summary judgment.

¶ 9 The district court awarded the UGA damages amounting to $158,441 for the value of the UGA Property. The court also awarded prejudgment interest as of January 1, 2000, the effective date of the notice to quit, and attorney fees and costs.

### STANDARD OF REVIEW

¶ 10 In order for summary judgment to be appropriate, there must be no genuine issue of material fact. The moving party must be entitled to judgment as a matter of law. *Greene v. Utah Transit Auth.,* 2001 UT 109, ¶ 10, 37 P.3d 1156. When reviewing a grant of summary judgment, we view the facts in the light most favorable to the non-moving party. *Norman v. Arnold,* 2002 UT 81, ¶ 2, 57 P.3d 997. However, we give no deference to the trial court's decision and review it for correctness. *Greene,* 2001 UT 109 at ¶ 10, 37 P.3d 1156.

### ANALYSIS

¶ 11 The City and the UGA entered into a contract containing a condition precedent re-

garding the transfer of the UGA Property to the UGA, or the transfer of the proceeds of the sale of the property to the UGA. We reverse the judgment below because the UGA did not meet the condition precedent contained in the agreement.

¶ 12 The Second Addendum contains the following language:

> In the event that User [UGA] elects not to construct the UGA Facility, User shall have the right to sell the Deeded Property and receive the proceeds from said sale only upon the following conditions ... User shall enter into a long-term (twenty years) use agreement for the Premises *upon such terms and conditions agreed upon between the parties* on or before the expiration of the original five (5) year Agreement Term.

(emphasis added). The trial court held that this provision is an unenforceable agreement to agree. *See Pingree v. Cont'l Group,* 558 P.2d 1317 (Utah 1976). The court then held that the First Addendum controlled, and that the UGA was "ready, willing, and able" to perform under the conditions set forth in the First Addendum.

 ¶ 13 Conditions precedent are operative facts "on which the existence of some particular legal relation depends." 8 Catherine Mc Cauliff, *Corbin on Contracts* § 30.6 (rev. ed.1999). Courts have long held that conditions that are indefinite but not illusory can be enforced. *See, e.g., Mattei v. Hopper,* 51 Cal.2d 119, 330 P.2d 625, 628–29 (1958) (holding condition requiring one party's satisfaction did not render contract for sale of property unenforceable). Where an indefinite condition depends upon the satisfaction of one or more parties, the duty to deal in good faith is sufficient to render the condition enforceable. *Id.* at 628. On the other hand, an unenforceable agreement to agree occurs when parties to a contract fail to agree on material terms of the contract "with sufficient definiteness to be enforced." *Cottonwood Mall Co. v. Sine,* 767 P.2d 499, 502 (Utah 1988) (quoting *Valcarce v. Bitters,* 12 Utah 2d 61, 362 P.2d 427, 428 (1961)).

¶ 14 The terms of the Second Addendum created an enforceable condition precedent, not an unenforceable agreement to agree. As a condition precedent, the Second Addendum does not purport to obligate either party to enter into a twenty-year lease. Rather, the Second Addendum provides that *if* the parties agreed to such a lease, the UGA would be entitled to the proceeds from the sale of the UGA Property. Both the City and the UGA are obligated only to act in good faith in negotiating the long-term lease. Under the contract, the UGA does not acquire any rights to the UGA Property in the absence of a long-term lease or bad faith behavior by the City.

¶ 15 The UGA argues that, because the City did not have perfect title to the UGA Property at the time of negotiation, the City anticipatorily breached its duty to convey the property. However, the fact that there were use restrictions on the UGA Property does not excuse the UGA from meeting the condition precedent before obtaining any rights predicated upon it. Further, it is a well-settled rule that a seller may make a valid contract to sell property, though the seller has no legal title to the property, as long as the seller has title when the time to convey arrives. *Neves v. Wright,* 638 P.2d 1195, 1199 n. 1 (Utah 1981). Until conveyance was due, the City could not have breached its duty, if any, to convey fee title. *Id.*

¶ 16 Since the UGA never met the condition precedent contained in the Second Addendum, the time for the City's conveyance of the UGA Property never arrived. The City never breached its contract with the UGA since it was not obligated to have perfect title to the UGA Property until the time of conveyance arrived. If the UGA had entered into a long-term lease agreement under the terms of the Second Addendum, and if the deed restrictions had not been lifted, then the UGA might have had a cause of action.

¶ 17 We need not address the City's argument that the contract was ultra vires and unenforceable for lack of legal consideration. It is impossible to evaluate whether the City might have received fair market value for the property in the absence of any agreed terms for the lease of office space or the purchase of the property. *Salt Lake County Comm'n v. Salt Lake County Attorney,* 1999 UT 73, ¶¶ 31–32, 985 P.2d 899. Additionally, we need not do so to resolve this case because the UGA's failure to enter into a long-term lease agreement prevented the City from incurring any obligation to transfer the UGA Property. Whether or not the City could legally transfer the property under the condition precedent is therefore irrelevant to our decision.

## CONCLUSION

¶ 18 The UGA did not perform the condition precedent which would have entitled the UGA to the proceeds of the sale of the UGA Property. The City did not breach its duty to convey perfect title to the property because the City was never obligated to convey the property to the UGA. Judgment is reversed and attorney fees are granted to the City. Reversed and remanded for proceedings consistent with our opinion.

¶ 19 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.