2008 UT 9

**Kim BOWMAN, as guardian for the minor heirs of Ann Davis Menlove, deceased, Plaintiff and Appellant,**

v.

**Michael A. KALM, M.D., Defendant and Appellee.**

No. 20060986.

Supreme Court of Utah.

Feb. 5, 2008.

Gregory W. Stevens, Salt Lake City, for plaintiff.

David H. Epperson, David C. Epperson, Salt Lake City, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 Plaintiff Kim Bowman appeals the district court's grant of summary judgment

against him on his claims, specifically on the issue of whether, in a medical malpractice case, the element of proximate cause must invariably be supported by expert testimony. We hold that it does not, and reverse.

## BACKGROUND

¶ 2 Defendant Dr. Michael A. Kalm is a psychiatrist; the decedent, Ann Davis Menlove, was Dr. Kalm's patient. Ms. Menlove was being treated by Dr. Kalm for anorexia, depression, and anxiety. During the course of her treatment, Dr. Kalm prescribed amitriptyline—a sleep agent—for Ms. Menlove. According to evidence found by police, Ms. Menlove filled her prescription for thirty sleeping pills on November 30, 2001.

¶ 3 Ms. Menlove was found dead on December 1, 2001, pinned under a bedroom dresser against her bed frame. An autopsy report concluded that the immediate cause of death was "asphyxiation due [to] mechanical compression of the chest." Amitriptyline was found in her system, and thirteen of the thirty sleeping pills were missing—far more than would have been missing had Ms. Menlove only taken the prescribed one pill per day.

¶ 4 Plaintiff Kim Bowman, the decedent's ex-husband, brought medical malpractice and wrongful death claims against Dr. Kalm on behalf of Ms. Menlove's minor heirs. In resisting Dr. Kalm's motion for summary judgment, Mr. Bowman provided expert testimony showing that Dr. Kalm had breached the standard of care in treating Ms. Menlove's anorexia and raising questions about the amitriptyline prescription. Evidence was also adduced to show that Ms. Menlove had proclivities to overdose on sleeping medication and to be clumsy due to medication and her anorexia—both of which Dr. Kalm was, or should have been, aware.

¶ 5 Mr. Bowman failed to provide any expert testimony, however, on the issue of whether Dr. Kalm's alleged malpractice was the proximate cause of Ms. Menlove's death. Noting this, Dr. Kalm moved for summary judgment, which the district court granted on both claims. The district court held that "since there's no expert testimony establishing a link between the alleged negligence and [Ms. Menlove's] alleged sufferings and physical problems ... it's appropriate that the motion for summary judgment is granted and this matter's dismissed." Mr. Bowman appeals from the district court's grant of summary judgment.

## STANDARD OF REVIEW

¶ 6 "[F]or summary judgment to be appropriate, there must be no genuine issue of material fact. The moving party must be entitled to judgment as a matter of law. When reviewing a grant of summary judgment, we view the facts in the light most favorable to the non-moving party." *Utah Golf Ass'n v. City of N. Salt Lake*, 2003 UT 38, ¶ 10, 79 P.3d 919 (citation omitted). "We grant no deference to the district court's conclusions of law and review them for correctness." *Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 20, 70 P.3d 1.

## ANALYSIS

¶ 7 There is a general requirement in medical malpractice cases that the element of proximate cause be supported by expert testimony.[1] This requirement is grounded in the fact that most medical malpractice cases "depend upon knowledge of the scientific effect of medicine." *Fredrickson v. Maw*, 119 Utah 385, 227 P.2d 772, 773 (1951). Because the standard of care and the causal link between the negligence and the injury are usually not within the common knowledge of the lay juror, testimony from relevant experts is generally required in order to ensure that factfinders have adequate knowledge

---

1. See *Butterfield v. Okubo*, 831 P.2d 97, 102 (Utah 1992) ("To recover for medical malpractice, the plaintiff must produce expert testimony that the medical professional's negligence proximately caused the plaintiff injury."); *Dalley v. Utah Valley Reg'l Med. Ctr.*, 791 P.2d 193, 195 (Utah 1990) ("To establish the standard of care required of a physician in a particular field, breach of that standard, *and proximate cause*, the plaintiff is generally required to produce an expert witness." (emphasis added)); *Nixdorf v. Hicken*, 612 P.2d 348, 354 n. 17 (Utah 1980) ("The plaintiff also has the burden of proving the negligence of the defendant was the proximate cause of the injury. This proof requires some expert testimony in medical malpractice cases.").

upon which to base their decisions. *See, e.g., Anderson v. Nixon,* 104 Utah 262, 139 P.2d 216, 220 (1943) ("Osteomyelitis being a disease the cause and cure of which is peculiarly within the knowledge of medical men and not a matter of common knowledge, it is necessary to have expert testimony on the effect of the negligence of a doctor on the end result.").

¶ 8 Mr. Bowman argues that this general requirement should not apply to cases involving psychiatrists, who are involved in mental health issues that are, he asserts, qualitatively different from other medical malpractice issues. We cannot find any support, however, in either our precedent or that of other jurisdictions, for this proposition. Rather, because such cases are likely to "depend upon knowledge of the scientific effect of [psychiatric] medicine," requiring expert testimony furthers the goal of a properly informed factfinder. *Fredrickson,* 227 P.2d at 773. The general requirement of expert testimony to prove proximate causation is thus as applicable to psychiatrists as it is to other medical professionals.

■ ¶ 9 This general requirement does not apply, however, to all medical malpractice cases.[2] There is a limited "common knowledge" exception to the general requirement, which may excuse a lack of expert testimony in some circumstances. This exception applies when the causal link between the negligence and the injury would be clear to a lay juror who has no medical training—i.e., when the causal connection is readily apparent using only "common knowledge."[3]

¶ 10 The common knowledge exception has usually been applied in the context of the standard of care issue. For instance, one commonly cited example occurred when a surgeon left a surgical tool inside a patient

following surgery. In that case, the court stated:

> [I]n certain situations, the medical procedure is so common or the outcome so affronts our notions of medical propriety that expert testimony is not required to establish what would occur in the ordinary course of events. In this type of situation the plaintiff can rely on the common knowledge and understanding of laymen to establish this element.

*Nixdorf v. Hicken,* 612 P.2d 348, 353 (Utah 1980). Likewise, where the causal connection between the alleged negligence and injury is "so common," *id.,* or is non-medical in nature, expert testimony is not required to prove proximate cause.

■ ¶ 11 This exception, like the general requirement, applies to both psychiatrists and other medical professionals; its application depends upon the negligence, the injury, and the causal link, and not upon the medical profession involved. For example, take the case of a psychiatrist who prescribes an anti depressant for an adolescent patient that is commonly known to produce, in some cases, increased suicidal thoughts in adolescents. If the patient subsequently commits suicide, expert testimony would be necessary to prove that the psychiatrist's negligence in prescribing the medication was the proximate cause of the suicide. This is so because, although the results of the research on the medication may be commonly known, the causal link is not itself "a matter of [the] common knowledge of laymen." *Marsh v. Pemberton,* 10 Utah 2d 40, 347 P.2d 1108, 1110 (1959). Conversely, if a surgeon mistakenly amputated the wrong leg, no expert testimony would be necessary to establish that the surgeon's breach of the standard of

---

2. *See Kent v. Pioneer Valley Hosp.,* 930 P.2d 904, 906 & n. 3 (Utah Ct.App.1997) (stating that "the plaintiff must provide expert testimony establishing that the health care provider's negligence proximately caused plaintiff's injury," but also noting that "there are certain limited situations where expert testimony ... is not needed"); *Chadwick v. Nielsen,* 763 P.2d 817, 821 (Utah Ct.App.1988) ("[E]xpert medical testimony must be presented at trial in order to establish the standard of care and proximate cause-except in unusual circumstances.").

3. We note that, although it is not relevant to this case, there is also a separate res ipsa loquitur exception to the general requirement for expert testimony in medical malpractice cases. *See, e.g., Dalley,* 791 P.2d at 195–96 ("Res ipsa loquitur is an exception to the general rule [requiring expert testimony in medical malpractice cases].").

care was the proximate cause of the patient's injuries.

¶ 12 It is not true, therefore, that proximate cause must *always* be supported by expert testimony in medical malpractice cases. While expert testimony is generally required, it is not necessary where the causal connection between the breach of the standard of care and the harm suffered is apparent using common knowledge. Mr. Bowman did not present any expert testimony on proximate cause. The next step, therefore, is to determine whether the common knowledge exception applies. If not, the district court correctly granted summary judgment for Dr. Kalm. If the common knowledge exception does apply, however, then the lack of expert testimony is no bar to Mr. Bowman's suit.

¶ 13 We conclude that this case falls within the common knowledge exception. Plaintiff asserts that Dr. Kalm failed to meet the standard of care by prescribing sleeping pills to Ms. Menlove when he should have known both that she would abuse them and that the prescription would make her clumsy. The immediate cause of death was asphyxiation due to a bedroom dresser falling over and pinning the decedent to her bed frame. The causal connection between a decedent made clumsy due to a doctor's negligence, and that decedent's death due to a dresser being pulled down on top of her, is not one that requires specialized medical knowledge.

¶ 14 This is not to say that the evidence adduced so far is necessarily sufficient to prove causation, or that some type of expert testimony might not be helpful on the issue (including, perhaps, testimony on the mechanics of how the dresser could have been made to tip over). It does mean, however, that a lack of expert medical testimony is not itself a bar to Mr. Bowman's claims. The common knowledge exception applies, and the district court erred in granting summary judgment based upon Mr. Bowman's failure to provide expert testimony.

## CONCLUSION

¶ 15 Expert testimony is generally required in medical malpractice cases in order to establish the element of proximate cause. It is not required, however, in cases where the causal connection between the alleged negligence and the harm caused is a matter of common knowledge. Because this case falls within the common knowledge exception, expert testimony is not necessary on the proximate cause element. We therefore reverse the district court's grant of summary judgment on both claims, and remand the case to the district court for further proceedings consistent with this opinion.

¶ 16 Reversed and remanded.

¶ 17 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Judge ORME concur in Associate Chief Justice WILKINS' opinion.

¶ 18 Having disqualified himself, Justice NEHRING does not participate herein; Court of Appeals Judge GREGORY K. ORME sat.