2021 UT 31

IN THE

## SUPREME COURT OF THE STATE OF UTAH

CAROL SHEPPARD,
*Appellant,*

*v.*

GENEVA ROCK, GENEVA ROCK PRODUCTS, INC., and DAVID DALBY,
*Appellees.*

No. 20190363
Heard February 17, 2021
Filed July 15, 2021

On Direct Appeal

Third District, Salt Lake
The Honorable Heather Brereton
No. 160904293

Attorneys:

Emily Adams, Freyja Johnson, Cherise Bacalski,
Bountiful, for appellant

Terry Plant, Matthew D. Church, Kirsten S. Ashton,
Colton A. Matheson, Salt Lake City, for appellees

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

### INTRODUCTION

¶1   A truck hit Carol Sheppard's vehicle as she was driving on I-15.[1] The truck's driver, David Dalby, worked for Geneva Rock. Sheppard brought a complaint against both Dalby and Geneva Rock alleging that Dalby's negligence had caused the crash. Sheppard also

---

[1] There has never been a trial concerning the factual allegations, so they remain allegations, not settled facts.

alleged that Geneva Rock had negligently employed Dalby and shared some fault for her injuries. Geneva Rock conceded that Dalby was at fault for the collision and then moved to exclude all evidence of negligence: both Dalby's and its own. The district court excluded the evidence of negligence and negligent employment.

¶2 Trial proceeded solely on the issue of damages. After Sheppard rested her case-in-chief, the district court ruled that the jury could not award special damages to Sheppard because she had produced insufficient evidence of those damages. The jury returned a general damages verdict of $30,000. The district court then granted Geneva Rock's renewed motion for judgment as a matter of law and vacated the jury's verdict. The court reasoned that Sheppard failed to produce evidence sufficient to meet the requirements that Utah Code section 31A-22-309 puts in place for plaintiffs seeking general damages in certain cases.

¶3 Sheppard argues that the district court erred when it: (1) overturned the jury's general damages verdict; (2) found that Sheppard had introduced insufficient evidence to permit the jury to consider special damages; and (3) concluded that the law required it to exclude evidence of Geneva Rock's negligent employment of Dalby. We reverse and remand.

## BACKGROUND

¶4 While driving on I-15 in July of 2012, Sheppard heard a loud bang. Her car spun and Sheppard found herself facing the wrong way in the middle of the freeway. She couldn't open the driver's side door. Sheppard climbed over her center console and exited on the passenger's side. As she climbed out, she felt a severe pain in her back. An ambulance transported her to an emergency room where she received stitches for a cut she sustained on her arm.

¶5 At the emergency room, Sheppard was diagnosed with "left flank and abdominal contusion." Later that month, her primary care physician diagnosed her with lower back strain. In the following year, Sheppard received treatment for lower back pain from a chiropractor and two courses of treatment from physical therapists.

¶6 A year after the crash, Sheppard relocated to Virginia. There, she sought treatment for her back from two different primary care clinics and a physical therapy clinic. That treatment continued through October 2015. The physical therapy clinic, operated by a therapist named Scott Roberts, charged her more than $65,000.

¶7 Although Sheppard had occasionally experienced back pain before the collision, a review of her medical records showed that she

did not complain of back pain or receive treatment for it before the collision.

¶8  Geneva Rock employed Dalby, the truck driver who struck Sheppard's car. A witness to the collision reported that Dalby was "making a turn into [Sheppard's] lane" and "actually crossed into that lane and made connection with her vehicle at that point."

¶9  Sheppard alleges that Dalby was accused of violating driving laws many times prior to the accident. Geneva posted safe driving stickers on its trucks that provided a number for motorists to call if they saw a Geneva Rock driver engage in unsafe driving. On at least eight separate occasions, Geneva Rock had received reports that Dalby ran red lights or stop signs, drove too fast for the conditions, wove in and out of traffic, failed to use signals, made improper lane changes, tailgated, failed to stay in his lane, or was otherwise discourteous.[2]

¶10  On another occasion, Geneva Rock sent Dalby home when a random drug and alcohol test revealed that he had arrived to work with a blood alcohol content of .029. Dalby received a verbal warning from Geneva Rock for that offense.

¶11  Within hours of the crash with Sheppard, Geneva Rock tested Dalby for alcohol, but Geneva Rock lost the test results. Geneva Rock later determined that Dalby was at fault for the accident and suspended him without pay, initially for five days, but then reduced it to four.[3]

¶12  While Dalby drove for Geneva Rock, Geneva Rock provided an incentive program for its drivers. The program tracked how many tons of material drivers moved for the company and

---

[2] Dalby denies that many of the reported incidents occurred. Dalby claimed Geneva Rock eventually ended the safe driving sticker program because other Geneva Rock truck drivers had called in false reports about him. But he admitted that Geneva Rock still received complaints about his driving after the program had ended. Dalby claimed, however, that the reports were "[v]ery few and far between."

[3] Dalby signed the agreement suspending him but wrote "in protest" next to his name.

compiled that into an "efficiency" score. Dalby received the highest efficiency score in the company several times.[4]

¶13 Sheppard filed a complaint alleging that Dalby's negligent driving injured her. She also alleged that Geneva Rock negligently employed Dalby by failing to adequately supervise and train him. Dalby and Geneva Rock initially denied Sheppard's complaint in its entirety. They also alleged that Sheppard's fault for the accident was as much as, or more than, their own.

¶14 Ten months after the end of fact discovery and near the eve of trial, Geneva Rock and Dalby admitted liability for the accident. Two days before trial was set to begin, the district court ruled that all evidence of defendants' negligence was irrelevant because Geneva Rock had admitted that Dalby was negligent and that respondeat superior made Geneva Rock liable for Dalby's negligence. Among other things, the district court barred the admission of the evidence Sheppard had collected about Dalby's seemingly checkered driving record and Geneva Rock's efficiency incentive program.

¶15 The parties proceeded to trial with damages as the only issue. Sheppard took the stand and described the crash, the pain she felt in her back, the cut she received on her arm, and the scar that the cut left behind. Sheppard recounted her treatment history following the collision, beginning with her emergency room visit immediately following the crash and extending to the physical therapy Roberts provided after she moved to Virginia.

¶16 During trial, Sheppard called an expert witness, Dr. Erekson, a physical therapist. Erekson testified that Roberts had billed Sheppard roughly $65,000 for physical therapy. In response to questioning, Dr. Erekson opined that, of that amount, only $28,685 was "justified."

¶17 After Sheppard rested her case, Geneva Rock moved for judgment as a matter of law. Geneva Rock argued that Sheppard had not introduced sufficient evidence to allow the jury to award general or special damages.[5]

---

[4] Some years, Dalby received no reward for his efficiency; others, he received movie tickets, restaurant coupons, and Geneva Rock golf shirts.

[5] General and special damages (also known as specific damages) are two different kinds of damages that are "meant to measure

(continued . . .)

¶18   With regard to special damages, Geneva Rock argued that Sheppard had not introduced sufficient evidence of her medical expenses to recover the expenses as special damages, because she had not introduced medical records. And, in the same vein, Geneva Rock argued that Sheppard had not provided evidence that the accident with Dalby caused the injuries for which she sought treatment—also preventing an award of special damages.

¶19   Geneva Rock further contended that Sheppard could not seek general damages because she did not satisfy the requirements of Utah Code section 31A-22-309 (the Personal Injury Protection statute or PIP statute). The PIP statute requires that, in certain circumstances, plaintiffs must prove that they have suffered one of six categories of damages before they can ask for an award of general damages.[6]

---

different types of harm." *Pinney v. Carrera*, 2020 UT 43, ¶ 34, 469 P.3d 970. General damages, "which are sometimes referred to as 'pain and suffering' or 'noneconomic' damages, measure the amount needed to compensate an individual for a 'diminished capacity for the enjoyment of life.'" *Id.* ¶ 36 (citation omitted). "In other words, general damages attempt to measure 'the difference between what life would have been like without the harm done . . . and what it is like' as a result of the harm." *Id.* (alteration in original) (citation omitted).

By contrast, specific damages "measure harm that is 'considered more finite, measureable, and economic because [it is] more easily calculated' in specific dollar amounts." *Id.* ¶ 35 (alteration in original) (citation omitted) (internal quotation marks omitted). "In other words, specific (or 'economic') damages are 'hard amounts [that are] subject to careful calculation' such as the cost of 'medical and other necessary care' or a decrease in 'earning ability.'" *Id.* (alteration in original) (citation omitted) (internal quotation marks omitted).

   [6] Utah Code section 31A-22-309(1)(a) states:
      A person who has or is required to have direct benefit coverage under a policy which includes personal injury protection may not maintain a cause of action for general damages arising out of personal injuries alleged to have been caused by an automobile accident, except where the person has sustained one or more of the following:

(continued . . .)

¶20 Sheppard argued that she met the PIP statute's requirements in two ways. She pointed to testimony concerning the medical bills she had incurred—bills that far exceeded the $3,000 that the PIP statute requires. She also contended that she had suffered a "permanent disfigurement" evidenced by a small scar that resulted from the cut she had sustained in the accident.

¶21 The district court partially granted Geneva Rock's motion for judgment as a matter of law. The court allowed the case to go to the jury on the issue of general damages. But the court found that Sheppard had not introduced sufficient evidence supporting a claim for special damages.

¶22 The jury returned a verdict for Sheppard and awarded her $30,000 in general damages. Defendants promptly renewed their motion for judgment as a matter of law. The district court granted the motion, concluding that Sheppard had not produced evidence satisfying any of the PIP statute's threshold criteria. Sheppard appealed.

¶23 On appeal, Sheppard requests alternative forms of relief. Sheppard asks that we reinstate the jury's general damages verdict. Alternatively, she asks us to give her a new trial if we decide that the district court improperly prevented her from seeking special damages. She also asks us to grant her a new trial if we find that the district court improperly excluded evidence of Geneva Rock's negligent employment. We conclude that Sheppard is entitled to a new trial because the district court erred when it granted the renewed motion for judgment as a matter of law. Because the issues might reemerge on remand, we hold that the district court erred when it excluded evidence of Geneva Rock's negligence and when it concluded that Sheppard had failed to qualify for general damages under the PIP statute.

---

 (i)  death;
 (ii)  dismemberment;
 (iii)  permanent disability or permanent impairment based upon objective findings;
 (iv)  permanent disfigurement;
 (v)  a bone fracture; or
 (vi)  medical expenses to a person in excess of $3,000.

**STANDARD OF REVIEW**

¶24 Sheppard argues that the district court erred when it granted Geneva Rock's motion for judgment as a matter of law on her claim for special damages. "This [c]ourt's standard of review of a [judgment as a matter of law] is the same as that imposed upon a trial court." *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 04, ¶ 21, 417 P.3d 95 (first alteration in original) (citation omitted). "A trial court is justified in granting a [judgment as a matter of law] only if, examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor." *See id.* (citation omitted). So, as with a judgment as a matter of law following a renewed motion under Utah Rule of Civil Procedure 50(b), we will affirm a judgment as a matter of law under rule 50(a) only if there is "no competent evidence" to support Sheppard's claims. *See id.* (citation omitted).

¶25 Sheppard also asks us to reverse the district court's decision to grant Geneva Rock's renewed judgment as a matter of law that vacated her award of general damages. In reviewing a trial court's denial of a motion for judgment as a matter of law or a renewed motion as a matter of law "on the basis of insufficiency of the evidence, 'we follow one standard of review: We reverse only if, viewing the evidence in the light most favorable to the prevailing party, we conclude that the evidence is insufficient to support the verdict.'" *Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 33, 31 P.3d 557 (citation omitted).

¶26 Finally, Sheppard contends that the district court erred when it granted Geneva Rock's motion *in limine* to exclude all evidence of negligence, a holding that implicitly invokes Utah Rule of Evidence 402.[7] We typically "review the admissibility of evidence under rule 402 for an abuse of discretion." *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 24, 289 P.3d 369. But we have noted that,

---

[7] Utah Rule of Evidence 402 states,

Relevant evidence is admissible unless any of the following provides otherwise:
- the United States Constitution;
- the Utah Constitution;
- a statute; or
- rules applicable in courts of this state.

Irrelevant evidence is not admissible.

> [w]hen district courts have discretion to weigh factors, balance competing interests, or otherwise choose among a range of permissible approaches or outcomes, those discretionary determinations must rest upon sound legal principles. For that reason, when a legal conclusion is embedded in a district court's discretionary determination, we peel back the abuse of discretion standard and look to make sure that the court applied the correct law.

*State v. Boyden*, 2019 UT 11, ¶ 21, 441 P.3d 737. Here, the district court's order rested on its legal conclusion that Utah law prevents Sheppard from introducing evidence of Geneva Rock's and Dalby's negligence after they admitted liability. We review that legal conclusion for correctness. *See id.*

## ANALYSIS

### I. SHEPPARD WAS ENTITLED TO ASK THE JURY TO AWARD SPECIAL DAMAGES

¶27 Sheppard claims that the district court erred when it granted Geneva Rock's motion for judgment as a matter of law on her claim for special damages. The district court reasoned that Sheppard had failed to produce sufficient evidence of those damages to permit a jury to rule in her favor.

¶28 It appears the district court was persuaded by Geneva Rock's argument that Sheppard had failed to demonstrate that the accident had caused her to incur the medical bills she introduced at trial. Geneva Rock argued that "there's an element of causation that's still remaining to be proved here." "That element is not did the accident happen, it's did this accident cause the injury." Pointing to the lack of expert testimony on causation, Geneva Rock contended that, under Utah law, "only [in] the most obvious cases is counsel exempted from the requirement of putting forth expert testimony to establish causation."

¶29 Sheppard acknowledged that she had not called an expert to testify concerning causation, but she argued that she satisfied the "common knowledge exception when it goes to causation." That is, she contended that causation was in the common knowledge of the jury and, therefore, she was not required to call an expert to opine that a car crash could cause back pain requiring medical treatment.

¶30 The district court granted the motion with respect to special damages. The court explained,

> My ruling is that it is within the common knowledge
> that the crash caused the injuries that [Sheppard]
> testified to. Where I depart from that is that you've put
> into evidence a course of treatment that occurred two
> years later [from Roberts] without anyone testifying
> that that treatment was necessitated by the injury. And
> that's where the distinction lies. So I do think that it's
> not within the common knowledge and experience of a
> jury that dry needling and 91 sessions with a physical
> therapist and the type of treatment that was provided
> by Mr. Roberts . . . was required to treat the injury.
> That's not within anyone's common experience.

In other words, the district court concluded that a jury would
commonly know that a car accident could cause injuries inflicting
back pain which could require some treatment or medical attention
soon thereafter, but that a jury would not commonly know that
treatment received two years later was a result of that accident. The
district court also appears to have concluded that Sheppard lacked
evidence that, even if the accident caused the injury, some of the
particular treatments she received were required to treat that injury.
And that knowledge of what treatments are necessary for lower back
pain is not within the common understanding of a jury.

¶31   Under Utah law, "once injuries have been shown, evidence
is required to show that the medical expenses accurately reflect the
necessary treatment that resulted from the injuries and that the
charges are reasonable." *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 35, 17
P.3d 1110. It is, of course, the plaintiff's burden to produce this
evidence. *See id.* ¶ 35 n.8. But we have held that expert testimony is
not necessarily required to prove that a particular injury caused
certain damages when the link between injury and treatment "would
be clear to a lay juror who has no medical training—i.e., when the
causal connection is readily apparent using only 'common
knowledge.'" *Bowman v. Kalm*, 2008 UT 9, ¶ 9, 179 P.3d 754. When
causation falls within this common knowledge exception, a court
"may excuse a lack of expert testimony in some circumstances." *Id.*

¶32   For example, in *Bowman*, we considered the claim of a
husband whose wife had been killed after a bedroom dresser fell and
pinned her to a bed frame. *Id.* ¶ 3. She asphyxiated under the
dresser's weight. *Id.* The husband filed suit against his wife's
psychiatrist claiming that the doctor had ignored his wife's
proclivity to "overdose on sleeping medication and to be clumsy due

9

to medication." *Id.* ¶ 4. The husband argued that the psychiatrist breached his duty of care when he prescribed her sleeping pills. *Id.*

¶33 The husband introduced expert testimony opining that the doctor had breached the standard of care by prescribing a particular medication. *Id.* But the expert did not opine on whether the psychiatrist's alleged malpractice was the proximate cause of his patient's death. *Id.* ¶ 5. The district court granted summary judgment, noting the lack of "expert testimony establishing a link between the alleged negligence" and the wife's demise. *Id.*

¶34 We reversed. We concluded that the case fell within the common knowledge exception. We reasoned that the "causal connection between a decedent made clumsy due to a doctor's negligence, and that decedent's death due to a dresser being pulled down on top of her, is not one that requires specialized medical knowledge." *Id.* ¶ 13. And we noted that the "lack of expert medical testimony is not itself a bar" to the plaintiff's claims. *Id.* ¶ 14. But we cautioned that this was "not to say that the evidence adduced so far is necessarily sufficient to prove causation, or that some type of expert testimony might not be helpful on the issue." *Id.*

¶35 Sheppard points to evidence presented at trial that suggests the "causal connection" between the collision, her injury, and the treatment she received is "readily apparent using only 'common knowledge'" under *Bowman* and therefore an appropriate question for the jury. *See id.* ¶ 9. Sheppard testified that she only occasionally experienced back pain before the collision. And Geneva Rock's expert witness noted for the jury that her medical records showed that she did not complain of back pain or receive treatment for it before the crash. *See supra* ¶ 7.

¶36 Sheppard also testified that she was hit by a truck in a collision so violent she ended up facing the wrong way on the freeway and could not open her driver's side car door. *See supra* ¶ 4. She told the jury that when she attempted to exit the vehicle, she immediately felt a pain in her back. *See supra* ¶ 4. And an expert witness testified that Sheppard went to the emergency room and was diagnosed with low back contusions. *See supra* ¶ 5.

¶37 Through the testimony of different witnesses, the jury heard that, from her emergency room diagnosis in July 2012 until the end of her physical therapy in October 2015, Sheppard sought treatment from a variety of providers for pain in her lower back. *See supra* ¶¶ 4-6. By Sheppard's account, all these facts show a "reiteration of the treatment that she received . . . [for] that same

back pain that she'd been feeling ever since the crash," creating a "causal link and connection" between the collision and her subsequent treatment.

¶38   The district court partially agreed. It concluded that it would be within the common knowledge of the jury that the collision could have caused Sheppard to suffer a lower back injury, but that a jury wouldn't know whether treatments she received two years later would have been caused by the accident. *See supra* ¶ 30. We disagree with that assessment.

¶39   Where, as here, the treatment continues virtually uninterrupted and there is no intervening cause that might suggest another reason for the treatment, it is in the jury's common knowledge that back injuries can cause pain that persists and requires continued treatment. The jury simply did not need someone with medical training to tell them that back pain resultant from an accident can last. But, much like we did in *Bowman,* we stress that we are not holding that Sheppard has proven causation; rather, we conclude that the evidence she offered allows the issue to go to the jury without an expert opinion on causation. *See Bowman*, 2008 UT 9, ¶ 14 ("This is not to say that the evidence adduced so far is necessarily sufficient to prove causation, or that some type of expert testimony might not be helpful on the issue . . . . It does mean, however, that a lack of expert medical testimony is not itself a bar to [these] claims.").

¶40   Geneva Rock argues against this conclusion, claiming that the treatment "was too complex and too far removed in time and space from the accident for the common knowledge exception to apply." Geneva Rock supports its argument with *Beard v. K-Mart Corp.*, 2000 UT App 285, 12 P.3d 1015. In *Beard*, the court of appeals examined the evidence required to prove "the link between the injuries [a plaintiff] suffered and the necessity of the surgeries" she received. *Id.* ¶ 16. And the court of appeals concluded that the plaintiff needed to present expert medical evidence to connect the surgeries she received on her neck and wrists to the blow to the head she received from a K-Mart employee. *Id.*

¶41   We discount *Beard*'s persuasive value for a pair of reasons. First, the court of appeals decided *Beard* some eight years before we handed down *Bowman.* Although *Bowman* did not expressly repudiate the court of appeals' conclusion in *Beard* that "[i]n Utah, in all but the most obvious cases, testimony of lay witnesses regarding the need for specific medical treatment is inadequate to submit the issue to the jury," we articulated a standard more lenient than "in all

but the most obvious cases." *Id.* Instead, in *Bowman*, we talked about a "limited 'common knowledge' exception" which will "excuse a lack of expert testimony in some circumstances." *Bowman*, 2008 UT 9, ¶ 9. And while we acknowledged that expert testimony would "generally" be required to show proximate causation in medical malpractice cases, we held that "it is not necessary where the causal connection between the breach of the standard of care and the harm suffered is apparent using common knowledge." *Id.* ¶ 12. As such, we disregarded *Beard*'s near-categorical approach in favor of a more fact-dependent inquiry.

¶42 Second, the causation question in Sheppard's case resembles *Bowman* more than *Beard*. *Beard* involved a plaintiff who was struck on the head by a K-Mart employee starting a lawnmower. 2000 UT App 285, ¶ 2. But the surgeries she based her damages on were performed on her neck and wrist. *Id.* While Beard complained about wrist and neck pain shortly after the accident, *id.*, the causal connection between an elbow to the head and wrist surgery is not within a jury's common knowledge. By contrast, Sheppard complained of back pain immediately after the collision and received continued treatment for that pain for years. Much like a jury does not need to be told that a drowsy person can asphyxiate under the weight of a heavy piece of furniture, as in *Bowman*, the fact that an automobile accident can cause pain that persists is within the jury's ken.

¶43 The district court seemed to have a second rationale for granting Geneva Rock's motion. The court stated: "I do think that it's not within the common knowledge and experience of a jury that dry needling and 91 sessions with a physical therapist and the type of treatment that was provided by Mr. Roberts is – was required to treat the injury. That's not within anyone's common experience." *Supra* ¶ 30. Geneva Rock agrees with the district court and argues that it "is not common knowledge" that Sheppard's injury would require the kinds of treatment that Sheppard's last physical therapist provided: "trigger point injections, massage, manipulation therapy, and therapist managed exercises."

¶44 This appears to speak not to causation, but to the requirement that a plaintiff introduce evidence "to show that the medical expenses accurately reflect the *necessary* treatment that resulted from the injuries and that the charges are reasonable." *Gorostieta*, 2000 UT 99, ¶ 35 (emphasis added). And we agree with the district court and Geneva Rock that this is true with respect to some of the treatments Sheppard received. For example, we can get

on board with the conclusion that a jury may need expert testimony to know that trigger point injections would be necessary to treat Sheppard's injury.

¶45   But the jury heard expert testimony on that issue. Dr. Erekson reviewed Sheppard's medical records and opined that $28,685 of the roughly $65,000 Sheppard had been charged was justified. Dr. Erekson also testified that at least some of the bills that he reviewed could not be justified and reflected treatment that had been "going too far" or for "too long." Although Dr. Erekson could have been more precise in his testimony, the logical inference from his opinion that he excluded bills for treatments that went too far is that the bills he found to be justified were for treatments Sheppard needed. As a result, Dr. Erekson bridged the evidentiary gap that appeared to trouble the district court.[8]

¶46   Sheppard should have been allowed to proceed with her claim for special damages. The causation of her injuries fell within the common knowledge exception and the necessity of the treatments she received was addressed by expert testimony. The jury would have been free to reject her argument for special damages, but the issue was one that the jury should have been allowed to resolve. Sheppard is entitled to a new trial.[9]

---

[8] Dr. Erekson's testimony resolves another issue Sheppard raises on appeal. The district court concluded that Sheppard had failed to show that she was entitled to general damages because she had not provided evidence demonstrating that she fell into any of the PIP statute's six categories and, based on that failure, granted Geneva Rock's renewed motion for judgment as a matter of law. One of those statutory requirements is that a plaintiff incur medical damages in excess of $3,000. UTAH CODE § 31A-22-309(1)(a)(vi). Because Dr. Erekson testified that Sheppard was appropriately billed $28,685 for her treatments, Sheppard met the PIP statute's strictures. We reverse the district court's contrary conclusion and hold that sufficient evidence was before the jury to permit it to consider if Sheppard was entitled to general damages. Because we reverse on this basis, we need not reach Sheppard's argument that she qualified for general damages under the PIP statute because the accident left her with a "permanent disfigurement." *See id.*

[9] Sheppard also argues that the district court "seemed to apply" the best evidence rule to exclude her evidence of medical damages and argues that the rule does not apply to her case. Geneva Rock

(continued . . .)

## II. THE DISTRICT COURT IMPROPERLY EXCLUDED EVIDENCE OF GENEVA ROCK'S NEGLIGENT HIRING PRACTICES

¶47 We could end our discussion of this case with the conclusion that Sheppard is entitled to a new trial because the district court did not permit Sheppard to seek special damages. We can, however, provide additional guidance on issues that are likely to recur on remand. *See State v. Cloud*, 722 P.2d 750, 755 (Utah 1986) (explaining that it is "appropriate" for us to address "contentions on appeal that will arise again upon retrial"). The question of whether Sheppard should have been allowed to introduce evidence of Geneva Rock's and Dalby's negligence raises just such an issue.

¶48 Sheppard had sought to admit evidence to establish Geneva Rock's negligent employment and Dalby's negligent driving. This evidence included eyewitness testimony that Dalby was driving recklessly the day of the collision. Sheppard had also adduced evidence of Dalby's extensive history of bad driving, and that he had shown up for work with alcohol in his system. Sheppard also wanted to tell the jury about Geneva Rock's efficiency incentive program and its lax disciplinary policies. Finally, Sheppard wanted to inform the jury that Geneva Rock failed to produce the drug and alcohol test it administered to Dalby the day of the collision.

¶49 Shortly before trial, the district court granted Geneva Rock's motion *in limine* to exclude evidence that it negligently employed Dalby and that Dalby drove negligently. Geneva Rock argued that since it had admitted liability, evidence of its hiring practices was irrelevant. The district court bought that argument and concluded that Sheppard could not "present any arguments or evidence, including in opening statements and closing arguments, that relate to liability issues."

¶50 The district court gave two reasons for excluding this evidence. First, it opined that the "case law is pretty clear in the absence of punitive damages, when [defendants] admit to liability, that that evidence is not admissible. There's not a case that's been

addressed the best evidence issue "in the interest of thoroughness" but asks us to "disregard" this issue "because the trial court ruled that any testimony about Roberts' bills was irrelevant for lack of proof of causation." On this point, we agree with Geneva Rock. The district court ruled on causation. And that is the issue we address.

presented by the plaintiffs to suggest otherwise." And, second, "I don't find the argument regarding differing damages based on the different claims, whether it be negligent employment or negligence in driving to be — I think it is the same measure of damages. Regardless, that damage that was caused by the accident."

¶51   Sheppard first argues that we ought to reverse the district court because Geneva Rock's negligent employment of Dalby caused her to suffer additional "anxiety and grief." She contends that this "anxiety and grief" was a kind of "mental reaction to [the] pain" caused by the initial accident. Specifically, she claims that she suffered additional "anxiety and grief" because: she learned that, when motorists reported that Dalby was engaging in extensive inappropriate behavior, Geneva Rock did almost nothing about it; she learned that Dalby showed up to work with alcohol in his system and he was merely sent home with a warning; she learned that Geneva Rock later lost his alcohol and drug test from the day of the collision; and she learned that Geneva Rock engaged in other similar conduct. She therefore argues that she ought to be able to show the jury evidence of the practices that caused her pain and suffering to increase.

¶52   The district court rejected this argument because it read the case law to be "pretty clear" that "in the absence of punitive damages, when they admit to liability, that that evidence is not admissible." Although the district court did not specify the case law on which it relied, it was presumably referring to *Jones v. Carvell*, 641 P.2d 105 (Utah 1982), a case Geneva Rock cited below to support its argument. Geneva Rock argues on appeal that we should affirm the district court based on *Jones*.

¶53   In *Jones*, this court held that "the rule is well-established that where liability is admitted, evidence going only to liability, in the absence of a claim of punitive damages, is not admissible." *Id.* at 112. The district court overlooked a key difference between *Jones* and this case. In *Jones*, we noted that the evidence would have been admitted "only to [prove] liability." *Id.* Sheppard wants to introduce this evidence to establish that Geneva Rock's conduct caused her additional pain and suffering. *Supra* ¶ 51. Thus, *Jones* does not speak directly to the question.

¶54   As Sheppard notes, "[j]uries are generally allowed wide discretion in the assessment of damages." (Quoting *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 71, 372 P.3d 629 (alteration in original) (citation omitted)). Within this wide discretion, juries are asked to assess "the difference between what life would have been like

without the harm done . . . and what it is like with that additional burden." *Judd v. Drezga*, 2004 UT 91, ¶ 4, 103 P.3d 135. The jury attempts to quantify the "diminished capacity for the enjoyment of life" that resulted from a personal injury. *Id.* The jury is not limited to assessing only physical injuries. Rather, "[t]he pain and suffering for which damages are recoverable in a personal injury action include not only physical pain but also mental pain or anguish, that is, the mental reaction to that pain and to the possible consequences of the physical injury." *Judd v. Rowley's Cherry Hill Orchards, Inc.*, 611 P.2d 1216, 1221 (Utah 1980).[10]

¶55 Unlike in *Jones,* Sheppard did not seek to introduce this evidence only to prove liability. She has a damages theory to which this evidence is arguably relevant. It was error for the district court to use *Jones* as a basis to exclude the evidence.[11]

---

[10] Geneva Rock implores us to reject Sheppard's attempt to recover damages for the mental anguish Geneva Rock's negligent employment of Dalby caused her. Among the reasons Geneva Rock offers are that Sheppard's claim is best characterized as a claim for an infliction of emotional distress—a cause of action Sheppard did not plead, and because Sheppard's recovery would open the door to a novel claim that could arise whenever a person learned about a company's negligent hiring practices. The district court did not base its decision on any of these arguments. As such, Geneva Rock asks us to affirm on an alternative ground apparent from the record— which is something we have discretion to do. *See, e.g.*, *Olguin v. Anderton*, 2019 UT 73, ¶ 20, 456 P.3d 760. But we decline to do so here because Geneva Rock has not alerted us to those portions of the record that would demonstrate that "a person of ordinary intelligence" would have been placed "on notice that the prevailing party may rely" on those alternative arguments on appeal. *Id.* (quoting *Francis v. State, Utah Div. of Wildlife Res.*, 2010 UT 62, ¶ 10, 248 P.3d 44). In taking this route, we offer no opinion on the ultimate viability of Sheppard's damages theory.

[11] We hasten to add that we are not holding that all, or even any, of the evidence Sheppard possesses will be admissible at trial. Geneva Rock may still challenge the admission of any individual piece of this evidence if there is a basis for its exclusion. We merely hold that the district court erred by misapplying *Jones* to conclude that the evidence was categorically irrelevant.

¶56   The second reason the district court gave for excluding this evidence was that "I don't find the argument regarding differing damages based on the different claims, whether it be negligent employment or negligence in driving to be — I think it is the same measure of damages. Regardless, that damage that was caused by the accident." It appears that the district court reasoned that a plaintiff should not be allowed to assert both a claim for negligence and negligent employment because they both arise out of the same accident and therefore implicate the same damages.

¶57   This was error for two reasons. First, as explained above, Sheppard advanced a theory of damages for her negligent employment claim that, if accepted, would have entitled her to damages distinct from those she could receive in her negligent driving case against Dalby. *See supra* ¶ 51.

¶58   Second, we have rejected the argument that a plaintiff cannot assert both a negligence and negligent employment cause of action if the employer concedes liability. *See Ramon v. Nebo School Dist.*, 2021 UT 30, __ P.3d __. In *Ramon*, the plaintiff asserted a negligence claim based on conduct of the driver of a school bus that struck his car, and a negligent employment claim against the school district that Ramon alleged continued to employ the driver even after a multitude of red flags about the driver's safety record. *Id.* ¶¶ 3-4. The district court granted a motion to dismiss the negligent employment claim reasoning, among other things, that the school district's liability was "fixed by the amount of liability of its employee when vicarious liability is admitted, and it cannot be increased by [a] separate negligent employment claim." *Id.* ¶ 8.

¶59   We reversed for a number of reasons. We noted that the Utah Liability Reform Act (the Act) permits a party to seek to have fault allocated to anyone for whom there is a legal or factual basis to assign fault. *Id.* ¶ 25 (discussing UTAH CODE § 78B-5-819(1)). We also rejected the argument that a plaintiff cannot seek to have fault allocated between a negligent employee and a negligent employer after the employer admits liability because it would not impact the quantum of damages available to the plaintiff. *Id.* ¶ 27 n.7. We reasoned that the Act's plain language permits that allocation. *Id.* ¶¶ 25-27, 27 n.7. We noted that permitting the plaintiff to have the jury consider the relative faults of the employer, employee, and the plaintiff—and not just the employee and the plaintiff—might alter the jury's allocation of fault. ¶ 27 n.7. And we emphasized that the legislature might have had non-economic reasons for permitting the allocation of fault even where an employer admits respondeat

superior liability for an accident, such as bringing harmful employment practices to light and encouraging corrective action. *Id.*

¶60 The relevant takeaway from *Ramon* is that evidence of an employer's negligent employment can be relevant to the question of allocation of fault even after the employer admits liability. We therefore reverse the district court's order granting Geneva Rock's motion in limine excluding, as irrelevant, all liability evidence.

## CONCLUSION

¶61 Sheppard introduced sufficient evidence to permit a reasonable jury to conclude that the accident caused her to incur medical expenses. We reverse the district court's judgment as a matter of law on the issue of special damages. We also reverse the district court's grant of Geneva Rock's renewed motion for judgment as a matter of law, which precluded general damages. We hold that Sheppard introduced sufficient evidence of her medical damages to meet the PIP statute's threshold requirements. And, because the issue may arise on remand, we also conclude that the district court erred in excluding evidence of Geneva Rock's employment practices, as we hold that evidence was still relevant after Geneva Rock admitted liability. We reverse and remand for a new trial.

———