2004 UT App 162

**NOVELL, INC., a Delaware corporation, Plaintiff and Appellee,**

v.

**The CANOPY GROUP, INC., a Utah corporation, Defendant and Appellant.**

No. 20030211–CA.

Court of Appeals of Utah.

May 13, 2004.

Robert L. Jeffs, Jeffs & Jeffs, Provo, and Ralph H. Palumbo, Philip S. McCune, Lynn M. Engel, and Lawrence C. Locker, Summit Law Group PLLC, Seattle, Washington, for Appellant.

John P. Mullen, Thomas R. Karrenberg, Scott A. Call, and Jon V. Harper, Anderson & Karrenberg, Salt Lake City, for Appellee.

Before Judges JACKSON, ORME, and THORNE, Jr.

## OPINION

JACKSON, Judge:

¶1 The Canopy Group, Inc. (Canopy), a Utah corporation, appeals the district court's grant of summary judgment to Novell, Inc. (Novell), a Delaware corporation, and the district court's denial of Canopy's motion for summary judgment. We affirm.

## BACKGROUND

¶2 This is a breach of contract action. Novell owned the source code for DR DOS, a computer operating system that was the target of anticompetitive practices by Microsoft in the early 1990s. Novell's board of directors worried that, if they brought suit against Microsoft in a private antitrust action, Microsoft would retaliate with further unfair practices that could neutralize the value of any antitrust recovery. At the same time, however, Novell's board of directors recognized that Novell's shareholders would not permit Novell to simply walk away from such a significant cause of action and potential recovery.

¶3 Accordingly, Novell entered into negotiations with Caldera, Inc., the predecessor in interest to Canopy, to sell DR DOS to Canopy.[1] The main purposes of this sale were to obligate Canopy to bring suit against Microsoft, to allow Novell to share in the recovery, and at the same time to obfuscate Novell's role in the action against Microsoft. Novell insisted that its role be completely undetectable to avoid retaliation from Microsoft.

¶4 To accomplish this, Novell and Canopy executed two separate documents: the first was a contract of sale, obligating Canopy to pay $400,000 for rights to the source code; the second was a temporary license obligating Canopy to pay $600,000 in license fees and "royalties." The royalties included provisions for payment to Novell of a percentage of any recoveries from lawsuits. The negotiations between the parties were very prolonged, and the parties considered a wide variety of proposed royalty bases.

¶5 Upon execution of the final documents, Canopy initiated suit against Microsoft. The

---

1. For convenience, we refer to Caldera and Canopy collectively as Canopy.

dispute was settled by Microsoft's payment of an undisclosed sum of money to Canopy. Before Canopy paid Novell its percentage, Canopy deducted attorney fees, court costs, and other litigation expenses, applying Novell's percentage against the balance. Novell initiated suit for breach of contract, claiming the two documents that constituted the contract made no allowance for the deductions Canopy made. Canopy counterclaimed for declaratory relief, asserting the existence of an oral agreement permitting deduction of attorney fees, costs, and expenses from the settlement with Microsoft before calculating Novell's share.

¶ 6 The district court first considered a motion for partial summary judgment by Novell to dismiss Canopy's counterclaim based on a contemporaneous oral agreement regarding the calculation of Novell's royalty base. The district court determined that the written contracts together constituted an integration. It therefore granted Novell's motion. The district court then considered Novell's motion for complete summary judgment. To counter that motion, Canopy argued that the terms of the royalty base, as contained in the written agreements, were ambiguous, and that a genuine issue of material fact therefore existed. The district court determined as a matter of law, however, that the terms were not ambiguous, and that Novell was entitled to judgment. It therefore entered summary judgment against Canopy, and denied Canopy's motion for summary judgment. Canopy appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Canopy challenges the district court's grant of summary judgment to Novell, and the denial of Canopy's motion for summary judgment.[2]

We review the district court's summary judgment ruling for correctness, granting no deference to its legal conclusions. In reviewing a summary judgment decision pursuant to Rule 56(c) of the Utah Rules of Civil Procedure, we consider whether the trial court correctly concluded that no

genuine issue of material fact exists and whether it correctly applied the law.

*Woodbury Amsource, Inc. v. Salt Lake County,* 2003 UT 28, ¶ 4, 73 P.3d 362; *see also* Utah R. Civ. P. 56(c).

## ANALYSIS

¶ 8 Canopy made two basic arguments for the existence of a genuine issue of material fact. First, it argued that the written contracts were not intended by the parties to be an integration of all their agreements. It claims that the parties entered into an oral agreement regarding the royalty base and that the parties did not intend the final writings to supercede the oral agreement. In its first summary judgment ruling, the district court determined that the contract was in fact integrated, and that no such oral agreement existed. Second, Canopy argues that, even if the contract was integrated, the contract's term defining Novell's percentage of the Microsoft recovery is ambiguous. In its second summary judgment ruling, the district court ruled the term is not ambiguous, and therefore denied the admission of extrinsic evidence to interpret the term.

### I. Integration

■ ¶ 9 Canopy argues the parties had entered into contemporaneous oral agreements not embodied in the final written contracts. For example, neither of the writings contained an explanation of Canopy's obligation to pursue an antitrust suit against Microsoft, but Novell does not dispute that that obligation is at the center of the parties' agreement. Likewise, Canopy asserts the parties agreed that it would deduct attorney fees, costs and expenses incurred in the Microsoft litigation before calculating Novell's percentage of the recovery. Canopy maintains that, because the parties did not intend the writings to supercede the contemporaneous oral agreements, the district court erred in ruling that the writings constituted the final and complete embodiment of the agreement between the parties. At the least, Canopy argues, a genuine issue of material fact exists regarding whether the parties in fact

---

2. Because we determine the district court correctly granted summary judgment to Novell, we

do not reach the challenge to the district court's denial of Canopy's summary judgment motion.

agreed to allow the deductions from the Microsoft recovery.

¶ 10 The parol evidence rule "operates in the absence of fraud to exclude [prior and] contemporaneous conversations, statements, or representations offered for the purpose of varying or adding to the terms of an integrated contract." *Union Bank v. Swenson,* 707 P.2d 663, 665 (Utah 1985) (emphasis omitted). "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement." *Eie v. St. Benedict's Hosp.,* 638 P.2d 1190, 1194 (Utah 1981) (quotations and citation omitted).

¶ 11 The parol evidence rule, as applied to integrated contracts, is a substantive rule of contract construction, rather than a rule of evidence. *See* 6 Arthur Linton Corbin, Corbin on Contracts § 573 at 72 (interim ed.2002). Parol evidence is not so much *inadmissible* to vary the terms of an integrated writing as it is *irrelevant,* because "the later agreement discharges the antecedent ones in so far as it contradicts or is inconsistent with the earlier ones." *Id.* at 82.

> "[A] court must first determine whether the writing was intended by the parties to be an integration. In resolving this preliminary question of fact, parol evidence, indeed any *relevant* evidence, is admissible." However, to preserve the integrity of written contracts, we apply "a rebuttable presumption that a writing which on its face appears to be an integrated agreement is what it appears to be."

*Smith v. D.A. Osguthorpe,* 2002 UT App 361,¶ 18, 58 P.3d 854 (alteration and emphasis in original) (citations omitted); *see also Terry's Sales, Inc. v. Vander Veur II,* 618 P.2d 29, 32 (Utah 1980) ("Where parties have various claims and obligations to each other, and have had a discussion about resolving their disputes which results in a written agreement signed by them, it is generally to be assumed that their disputes were merged into the written agreement.").

¶ 12 Canopy produced a great deal of evidence to establish that the written agreements do not contain all the terms to which the parties agreed, such as Canopy's obli-

gation to sue Microsoft. It argues further that the agreements themselves purposely obfuscated Novell's entitlement to a recovery from Microsoft by dealing with Novell's entitlement in very broad, general terms.

¶ 13 Canopy's evidence and arguments, however, do not negate Canopy's concession that it entered into written agreements that provide for the payment of royalties by Canopy to Novell. Canopy's evidence clearly shows the parties participated in prolonged negotiations to settle their disagreements regarding the deductions and Novell's overall percentage. Canopy's evidence may or may not establish the existence of a prior agreement.

¶ 14 However, Canopy has not rebutted the presumption of integration. Absent a showing to the contrary, we "assume[ ] that their disputes were merged into the written agreement." *Id.* at 32. In other words, regardless of whether the parties may have had preliminary agreements about a given subject during the course of negotiations, we will assume that a writing dealing with the *same subject* was intended by the parties to supercede any prior or contemporaneous agreements. *See id.; see also Smith,* 2002 UT App 361 at ¶ 18, 58 P.3d 854. Canopy's arguments and evidence regarding the apparently laborious and convoluted nature of the parties' negotiations are therefore entirely irrelevant to rebut the presumption that the parties intended to replace their prior agreements with a new agreement in the form of the final writings. *See id.* (applying the presumption of integration); 6 Arthur Linton Corbin, Corbin on Contracts § 573 at 82 (explaining that evidence of prior agreements is irrelevant to question of integration).

¶ 15 Further, a showing that the parties did not include all the terms of their agreement in the writing does not render the writing unintegrated with respect to the terms it does include, because contracts may be partially integrated:

> "[P]arol evidence *not inconsistent with the writing* is admissible to show what the entire contract really was, *by supplementing, as distinguished from contradicting,*

*the writing.* In such a case parol evidence to prove the part not reduced to writing is admissible, although it is not admissible as to the part reduced to writing."

*Webb v. R.O.A. Gen., Inc.,* 804 P.2d 547, 551 (Utah Ct.App.1991) (emphasis in original) (quoting *Stanger v. Sentinel Sec. Life Ins. Co.,* 669 P.2d 1201, 1205 (Utah 1983)). "Therefore, in most instances, where a binding agreement exists, whether completely or partially integrated, evidence of prior or contemporaneous agreements or discussions is not admissible to *contradict* terms of the written agreement." *Id.* (emphasis added); *see also State Bank of Lehi v. Woolsey,* 565 P.2d 413, 418 (Utah 1977)(stating "parol evidence of contemporaneous conversations, representations or statements will not be received for the purpose of varying or adding to the terms of the written agreement").

¶ 16 Here, the parties entered into a written contract presumed to be the final expression of their agreement with respect to royalties. The terms of that writing obligate Canopy to pay Novell a percentage of its recovery from Microsoft. Indeed, that percentage is the central purpose of, and impetus for creating, the contract. Canopy argues for the existence of a contemporaneous or prior verbal agreement that would reduce the amount to which Novell is entitled. These deductions are nowhere alluded to in the contract, and would result in a payment to Novell of less than the agreed-upon percentage of the overall Microsoft recovery. Thus, the purported oral agreement allowing Canopy to reduce the Microsoft recovery by the amount of its litigation expenses would contradict the terms of the written agreements. Accordingly, the district court was correct not to give force or effect to the alleged oral agreement.

¶ 17 Because Canopy has not presented any evidence that would establish the parties did not intend the writings to be integrated, the district court's first summary judgment ruling was correct. Thus, we affirm the district court's ruling regarding integration.

## II. Ambiguity

¶ 18 The license agreement provides for the payment of a royalty to Novell by Canopy. The agreement further provides that the royalty is to be paid on the "Royalty Base," defined in the agreement as "Gross Revenues less the book value of assets sold." "Gross Revenue" is defined as

[a]ll proceeds, gross receipts, and revenues of [Canopy], net of returns and allowances, relating to any sale, license, transfer, settlement, award, recovery or any other amounts accrued or earned relating to transactions occurring or causes of action arising prior to the fifth anniversary of the Effective Date, including causes of action arising prior to the Effective Date.

¶ 19 Canopy argues that the term "proceeds" is ambiguous, because it "can mean either gross proceeds (before deduction for fees and costs) or net proceeds (after deduction for attorney[ ] fees and costs)." Thus, it argues, there is a genuine issue of material fact that renders summary judgment inappropriate.

¶ 20 Courts determine whether a term is ambiguous as a matter of law. *See Parduhn v. Bennett,* 2002 UT 93,¶ 5, 61 P.3d 982. "The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract. 'In interpreting a contract, the intentions of the parties are controlling.' " *WebBank v. American Gen. Annuity Serv. Corp.,* 2002 UT 88,-¶ 17, 54 P.3d 1139 (citations omitted).

If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law. However, if the language of the contract is ambiguous such that the intentions of the parties cannot be determined by the plain language of the agreement, extrinsic evidence must be looked to in order to determine the intentions of the parties. If a contract is ambiguous, the court may consider the parties' actions and performance as evidence of the parties' true intention.

An ambiguity exists in a contract term or provision if it is capable of more than one reasonable interpretation because of un-

certain meanings of terms, missing terms, or other facial deficiencies.

*Id.* at ¶¶ 19–20 (internal quotes and citations omitted). "When ambiguity exists, the intent of the parties becomes a question of fact. [A] motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists in the contract and there is a factual issue as to what the parties intended." *Id.* at ¶ 22 (alteration in original) (internal quotes and citations omitted).

¶ 21 To determine whether a contract term is ambiguous, a court is not limited to the document itself; rather, the court may look to all the attendant circumstances surrounding the execution of the document:

> When determining whether a contract is ambiguous, any relevant evidence must be considered.... Although the terms of an instrument may seem clear to a particular reader—including a judge—this does not rule out the possibility that the parties chose the language of the agreement to express a different meaning. A judge should therefore consider any credible evidence offered to show the parties' intention.
>
> . . .
>
> [R]ational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties ... so that the court can place itself in the same situation in which the parties found themselves at the time of contracting. If after considering such evidence the court determines that the interpretations contended for are reasonably supported by the language of the contract, then extrinsic evidence is admissible to clarify the ambiguous terms.

*Ward v. Intermountain Farmers Assoc.*, 907 P.2d 264, 268 (Utah 1995) (alteration and second omission in original) (internal quotes and citation omitted).[3]

¶ 22 Here, the district court considered evidence presented by both sides concerning the negotiations and drafting of the final written agreement. Specifically, it con-

sidered evidence that in earlier drafts of the agreement the parties had agreed that Canopy would deduct litigation expenses from the recovery. Further, it considered evidence of Novell's intention to obfuscate its role in the Microsoft litigation by using "unclear" and general terms in the Canopy–Novell contract. It also considered Canopy's argument that there exist mutually exclusive dictionary definitions of the word "proceeds." Ultimately, the district court determined that the term "proceeds" as contained in the agreement is not ambiguous, and thus that no parol evidence may be introduced to explain the meaning of the contract term. We agree with the district court that this term is not ambiguous.

¶ 23 Canopy has vigorously argued, below and on appeal, that Novell's attempts to disguise its role in the Microsoft litigation have resulted in the inclusion of ambiguous terms in the final written agreement. It has not, however, offered any evidence to support the claim that the parties may have ascribed a meaning to the term "proceeds" that would permit deduction of any expenses other than those already listed in the contract's definition of "Gross Revenue."

¶ 24 "[A] contract provision is not necessarily ambiguous just because one party gives that provision a different meaning than another party does. To demonstrate ambiguity, the contrary positions of the parties must each be tenable." *R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1074 (Utah 1997). In this case, Canopy has not offered any evidence that would render its position tenable.

¶ 25 There is no dispute that earlier drafts of the License Agreement included a deduction for litigation expenses in the definition of the term "Royalty Base." There is also no dispute that at the six-hour "marathon" closing, after several drafts of the agreement were proposed and discarded, the litigation expense deduction was removed. Canopy argues this removal was simply part of Novell's

---

3. Thus, even if a contract is integrated such that the parol evidence rule precludes the admission of extrinsic evidence to *contradict* the terms of the written contract, if the integrated contract contains a term which is ambiguous, extrinsic evidence will be admitted to *clarify* the meaning of the contract.

scheme to obfuscate its role in the Microsoft litigation. We fail to see how it furthers Novell's obfuscation schemes to include a provision obligating Canopy to pay a percentage of any litigation recovery, but then to conceal the fact that Canopy may deduct litigation expenses. Thus, the obfuscation argument offers no evidentiary basis to conclude the term "proceeds" is ambiguous.[4]

¶ 26 Beyond evidence of the attendant circumstances surrounding the execution of the writings, Canopy argues the term "proceeds" is ambiguous on its face. It offers several mutually exclusive dictionary definitions that could include deductions for expenses incurred in obtaining the proceeds. The test for determining facial ambiguity in a contract, however, is not whether several definitions of a word exist, but whether the term, *in context of the contract,* "is capable of more than one reasonable interpretation." *WebBank v. American Gen. Annuity Serv. Corp.,* 2002 UT 88, ¶ 20, 54 P.3d 1139.

¶ 27 Here, the term "proceeds" is not capable of reasonably being interpreted to include a litigation expense deduction because the term "Gross Revenue," the definition of which includes "proceeds," describes exactly what should be deducted to arrive at a net. It says *"[a]ll* proceeds, gross receipts, and revenues of [Canopy], *net* of returns and allowances."[5] (Emphasis added.) It is unreasonable to say the term "proceeds" might include a deduction when, in the same sentence, the parties expressly inserted deductions for "returns and allowances." If "proceeds" meant "net proceeds," there would be no reason to insert *"net* of returns and allowances." (Emphasis added.) This would run afoul of our rules of contract construction because it would render meaningless the deductions portion of the definition of "Gross Revenue." *See Plateau Mining Co. v. Utah Div. of State Lands & Forestry,* 802 P.2d 720, 725 (Utah 1990) ("Each contract provision is to be considered in relation to all of the others, with a view toward giving effect to all and ignoring none." (Internal quotes and citation omitted.)). Indeed, "a word is known by the company it keeps." *Hansen v. Wilkinson,* 658 P.2d 1216, 1217 (Utah 1983) (internal quotes and citation omitted).

¶ 28 Further, even if the term "proceeds" could be reasonably interpreted to mean "net proceeds" or "gross proceeds," as Canopy asserts, the definition of "Gross Revenue" provides for Novell's percentage to be applied against *"all* proceeds." (Emphasis added.) Even if the term "proceeds" is ambiguous, the term "all" is not. "[A]ll proceeds" would include both "gross proceeds" and "net proceeds," effectively precluding the deductions Canopy seeks. Thus, the district court correctly determined the term "proceeds" is not ambiguous in the context of this contract and susceptible to being interpreted to include deductions for litigation expenses. Accordingly, we affirm the district court's grant of summary judgment to Novell on its affirmative claim against Canopy.

## CONCLUSION

¶ 29 The district court correctly concluded the royalty base provisions of the written agreements were integrated, thus merging any prior oral agreements. It accordingly correctly granted partial summary judgment to Novell on Canopy's counterclaim. The district court also correctly concluded that the contract term "proceeds" contained in the definition of "Gross Revenue" is unambiguous and does not contemplate the deduction of Canopy's litigation expenses. Accordingly, it correctly granted summary judgment on Novell's substantive claim against Canopy. We affirm.

¶ 30 WE CONCUR: GREGORY K. ORME, Judge and WILLIAM A. THORNE JR., Judge.

---

4. The district court perspicuously noted that the Canopy position "requires the court to reach the anomalous conclusion that by taking the attorney[ ] fee provision *out* of the agreement it really was writing the provision *into* the agreement."

5. Canopy does not argue that litigation expenses are subsumed within the term "returns and allowances."