2024 UT App 70

# THE UTAH COURT OF APPEALS

THE LOCAL PAGES OF NEVADA, LLC,
Appellant,
*v.*
PLUMB LINE MECHANICAL, INC.,
Appellee.

Opinion
No. 20220339-CA
Filed May 9, 2024

Third District Court, Salt Lake Department
The Honorable Laura Scott
No. 190901187

D. Scott Crook, Attorney for Appellant

Jordan K. Cameron, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

MORTENSEN, Judge:

¶1     Plumb Line Mechanical, Inc. (Plumb Line), a plumbing and
HVAC company, had advertised for many years in the local
phone book printed by The Local Pages of Nevada, LLC (Local
Pages). In negotiating ads for the 2014 edition, Local Pages
emailed a proposal to Plumb Line. The contract form, which was
included as an attachment, contained a handwritten note that
could be interpreted to mean the contract was for a fixed term of
five years. But the text of the email to which the form was attached
said that it was for a term of "up to 5 years"—arguably an option
contract for five years, renewable annually. Plumb Line canceled
its advertising after three years, and Local Pages sued. Since these
two terms stood in direct contradiction to one another, the district
court allowed extrinsic evidence to resolve the ambiguity. The
jury determined that the contract was renewable annually.

Alleging a number of errors, Local Pages appeals. We affirm the judgment.

BACKGROUND

¶2      Beginning around 2005, Plumb Line advertised annually in a telephone directory printed by Local Pages. Each year, Plumb Line would "go through the negotiation process" with Local Pages' owner (Owner) about the "size and location" of ad placement in the directory.

¶3      Around 2013, Plumb Line contemplated pulling out of this advertising because it had become increasingly ineffective. Plumb Line met with Owner and said it was not "planning to advertise in [the] forthcoming issue 14," meaning the 2014 directory (Issue 14). But Owner offered "incentives to induce Plumb Line to advertise in that issue." Plumb Line claimed that Owner "dropped the price substantially and said that he would hold the pricing up to five years if [Plumb Line] advertised that year."

¶4      On April 17, 2013, Owner sent an email (April 17 Email) to Plumb Line's service manager that stated, in relevant part, "I propose the following. . . . Rather than the [$]1999 a month[,] . . . I will go [$]1499 a month and leave all ads the same as last year. I will honor this deal for up to 5 years with no increase for you also." Notably, the previous year's contract and, indeed, all the previous contracts between Local Pages and Plumb Line were for one year and identified only one issue of the phone book. The email concluded with these terms, "A simple reply to this email will suffice[.] I trust you guys[;] we don't need to sign contracts and all that jazz. I also attached the contract for your review."

¶5 The April 17 Email came with a three-page printed contract (Advertising Contract) attached to it.[1] The first two pages, which were identical in every respect except for descriptions of the ads and were the same as had been used in previous years, contained details of the ads that Plumb Line would purchase, and the third page consisted of boilerplate terms and conditions. As relevant here, the Advertising Contract included the following provisions:

- A box labeled "ISSUE" that said "14," presumably in reference to the issue for the year 2014;

- A handwritten line on the second page that said, "5 year agreement at same rate each year";

- A printed box reading, "SUBTOTAL 12 PMTS OF" with nothing written next to it;

- A printed box reading, "TOTAL 12 PAYMENTS OF" with "1,499.00" handwritten next to it;

- A printed box with handwriting on the second page (as indicated here with italics) reading, "*$0 Now 12 Pmts. of $1,499.00 Starting MC*";2 and

---

1. In the record, we have encountered a version of the contract with two additional pages featuring columns that appear to provide extra space for the description of ads. The record is unclear as to whether these additional pages were included in the attachment, but we observe that they contain no material terms that would play a role in our analysis if we were to consider them. Moreover, neither party appears to attach any significance to these additional pages.

2. "MC" was identified as the "PAY CODE," presumably in reference to a credit card.

- On the terms and conditions page, a printed provision stating, "The advertising space specified on the face of this contract is for insertion into the next possible issue of the indicated directory as determined by publisher. . . . The advertiser agrees to pay the charges as indicated on the face of this contract . . . . Unless otherwise specified in writing, terms are payment in full upon contract signing."

¶6 On April 23, Plumb Line's service manager responded by email, saying that the proposal "doesn't sound bad" and asking for "the break down on all that." Owner responded by email about thirty minutes later, describing the size, location, and features of the ads. On April 24, the service manager responded by email, saying that he had printed the attachment and that he and Plumb Line's owner would "review" the proposal and would let Owner know that morning. About an hour later, the service manager sent Owner another email (April 24 Email), writing, "We are a go in your phone book." The Advertising Contract was never signed by either party.

¶7 After these exchanges, Plumb Line paid Local Pages over the next three years for print advertising. But in June 2016, Plumb Line informed Local Pages by phone, email, and letter that it would not be renewing the contract. Local Pages responded by asserting that under the terms of the contract, Plumb Line had only three days from the date of acceptance to cancel. Since this date had long passed, Local Pages maintained that Plumb Line could not cancel the contract and continued to publish Plumb Line's advertisements in the next two annual issues of the phonebook. Local Pages sued Plumb Line for breach of contract, asserting that the contract was for five years (2014 through 2018) and claiming damages of nearly $36,000 arising from the two unpaid years, along with a claim for attorney fees and costs.

¶8 After discovery was completed, Local Pages filed a motion for summary judgment. Local Pages argued that summary

judgment was appropriate on its breach of contract claim, along with damages, because the undisputed facts established (1) that a valid contract was formed between Local Pages and Plumb Line and (2) that the contract was for five years with twelve installments of $1,499 each year. The district court largely denied the motion. The court concluded that, based on undisputed facts, the "April 24 Email was an acceptance of the offer communicated in the April 17 Email." The court also stated that "[b]ecause the attachment to the April 17 Email was not signed, the contract between the parties [could not] be understood without reference to the April 24 Email." The court concluded,

> The April 24 Email and the [Advertising Contract attached] to the April 17 Email, viewed together, do not set forth unambiguous terms that the [court] can interpret and apply as a matter of law. Among other reasons, this is because the offer in the April 17 Email to "go [$]1499 a month and leave all ads the same as last year" and to "honor this deal for up to 5 years with no increase" can be reasonably interpreted to refer to a five-year option agreement which gave Plumb Line the right to renew, at the same rate each year, a one-year contract to advertise in [Local Pages'] phone book. However, the offer could also be reasonably interpreted to refer to a five-year, fixed term agreement that bound Plumb Line to advertise in [Local Pages'] phone book for a total of five years.

¶9    Moreover, the court concluded that even if the Advertising Contract formed the entire contract, it did "not set forth unambiguous terms" that could be interpreted and applied as a matter of law. Specifically, the court noted that the handwritten line that stated, "'5 YEAR AGREEMENT AT SAME RATE EACH YEAR,' when viewed in light of the other terms" in the

Advertising Contract, could refer to either a five-year option agreement or a five-year, fixed-term agreement.

¶10    Thus, the court concluded that

> genuine issues of material fact preclude summary judgment on the critical issue of whether the parties agreed to a one-year contract which included a five-year option agreement which gave Plumb Line the right to renew, at the same rate each year, its one-year commitment (as Plumb Line contends) or whether the parties agreed to a five-year, fixed term agreement that bound Plumb Line to advertise in [Local Pages'] phone book for a total of five years (as [Local Pages] contends).

¶11    The court further concluded that "[b]ecause the written record of the parties' contract [was] ambiguous, extrinsic evidence should be used to resolve the ambiguities if possible." This extrinsic evidence, the court stated, would include, but not be limited to, the testimony of the contracting parties.[3]

¶12    At a jury trial, Owner, Local Pages' director of finance, Plumb Line's owner, Plumb Line's office manager, and Plumb Line's service manager testified. Especially relevant here, Plumb Line also called a third-party witness (Customer) who had entered into a similar advertising contract with Local Pages. Local Pages had moved to exclude Customer on a variety of evidentiary grounds, but the court denied that motion, finding that Customer's testimony "regarding the handwritten phrase '5 YEAR DEAL AT SAME RATE EACH YEAR' in [Customer's] contract [was] relevant and probative of the proper interpretation

---

3. The court partially granted the motion for summary judgment on the issue of damages and attorney fees, concluding that if Local Pages prevailed at trial on its breach of contract claim, it would be entitled to damages and attorney fees.

of the phrase '5 Year Agreement at same rate each year' in the Plumb Line written contract under the Utah Rules of Evidence." In denying the motion, the court set strict parameters for the scope of Customer's testimony. The court said that Customer's testimony would consist of showing Customer the contract, having him "identify" that it was between his business and Local Pages, and asking him "whether he discussed the handwritten language on that contract" with Owner and, if so, what Owner told him about it. The court clarified that Customer's testimony was relevant only insofar as it addressed what Owner told him the handwritten "language meant." Customer's testimony was, in fact, brief at trial. On direct examination, Customer was asked, "Did [Owner] tell you what he was writing on the contract?" He responded, "The writing on the contract is what [Owner] said would guarantee I could have the same rate if I renewed my contract."

¶13 After both sides rested, the jury was excused, and the court entertained a motion from Local Pages for judgment as a matter of law. Local Pages' counsel (Counsel) stated,

> I have a motion [for judgment as a matter of law]. [T]he motion for summary judgment that we [previously filed] was denied premised on the fact that there was an ambiguity with respect to the five-year agreement at the same rate each year.
>
> It was premised on the argument . . . that Plumb Line had reviewed the five-year agreement at same rate each year and found it ambiguous based on the email.
>
> The testimony that [the service manager] just gave was that he never read the contract at the time he said let's move ahead. . . . [A]nd he also admitted in his testimony that five-year agreement meant a fixed year term if he disregarded everything else.

Counsel then cited *McBroom v. Child*, 2016 UT 38, 392 P.3d 835, for the proposition—as articulated by Counsel—that a "party can't rely on the representations of another party if they have access to the agreement." *See id.* ¶ 23 ("A person who, having the capacity and an opportunity to read a contract, is not misled as to its contents and . . . cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it." (cleaned up)). Counsel argued that Plumb Line acknowledged it had received and had in its possession the Advertising Contract, as well as that Plumb Line was "approving of the agreement when [it] sent" the April 24 Email. The court denied the motion, noting that Plumb Line "didn't sign the contract." Rather, "[t]hey responded to an email, said, 'We're good to go in the phonebook' in response to an email that purported to describe what the deal was which said 'up to five years.'"

¶14 Before the jury deliberated, the court informed the jury of the following facts to which Plumb Line and Local Pages had agreed:

> (1) On April 17, 2013, [Owner], acting on behalf of [Local Pages], sent an email to [the service manager], who was an employee of [Plumb Line].
>
> (2) The [April 17 Email] also included an attachment.
>
> (3) On April 24, 2013, [the service manager], acting on behalf of [Plumb Line] sent an email to [Owner] stating "We are a go in your phone book."
>
> (4) After these exchanges, [Plumb Line] paid [Local Pages] for three years of print advertising.

Since the parties have agreed on these facts, you must accept them as true for purposes of this case.

¶15     The jury returned a verdict in favor of Plumb Line. Plumb Line subsequently filed a motion for attorney fees and costs in the amount of $112,182.45. Based on a stipulation and on Utah's reciprocal attorney fee statute, *see* Utah Code § 78B-5-826, the court granted the motion but reduced the award by $13,560. Local Pages appeals.

ISSUES AND STANDARDS OF REVIEW

¶16     Local Pages raises three issues on appeal. First, it asserts that the district court erred in denying its motion for judgment as a matter of law. An appellate "court's standard of review of a judgment as a matter of law is the same as that imposed" on a district court. *Sheppard v. Geneva Rock,* 2021 UT 31, ¶ 24, 493 P.3d 632 (cleaned up). And a district "court is justified in granting a judgment as a matter of law only if, examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor." *Id.* (cleaned up); *see also SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs.,* 2001 UT 54, ¶ 9, 28 P.3d 669 ("In deciding whether the trial court correctly granted judgment as a matter of law, we give no deference to the trial court's view of the law; we review it for correctness." (cleaned up)).

¶17     Second, Local Pages asserts that the district court erred in allowing the limited testimony of Customer as extrinsic evidence regarding the meaning of ambiguous terms of the contract. "We grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion. Thus, we will not reverse a trial court's ruling on evidence unless the ruling was beyond the limits of reasonability." *Daines v. Vincent,* 2008 UT 51, ¶ 21, 190 P.3d 1269 (cleaned up).

¶18   Third, Local Pages contends that the district court erred in awarding attorney fees. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Daniels v. Deutsche Bank Nat'l Trust*, 2021 UT App 105, ¶ 27, 500 P.3d 891 (cleaned up). Regarding the reasonableness of fees, a district court "is in a better position than an appellate court to gauge the quality and efficiency of the representation and the complexity of the litigation." *Valcarce v. Fitzgerald*, 961 P.2d 305, 317 (Utah 1998) (cleaned up). Accordingly, "calculation of reasonable attorney fees is in the sound discretion of the trial court, and will not be overturned in the absence of a showing of a clear abuse of discretion." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988) (cleaned up).

ANALYSIS

I. Judgment as a Matter of Law

¶19   Local Pages asserts that the district court erred in denying its motion for judgment as a matter of law. Specifically, Local Pages argues that the district court was required to enter judgment as a matter of law because Plumb Line's testimony established that it "was not legally entitled to use the defense of ambiguity." Local Pages bases this assertion on the premise that Plumb Line "representatives admitted that they never read the Advertising Contract . . . before entering into it." Local Pages claims that since Plumb Line admitted to not reading the Advertising Contract, "Utah law is clear—[Plumb Line] could not argue that the contract language was ambiguous." While Local Pages concedes that "no Utah case has explicitly held that a defendant cannot defend against the enforcement of a contract because a term of a contract the defendant has not read is ambiguous," it argues that "the rule should be extended to apply in this case." To be clear, on appeal, Local Pages does not directly take issue with the district court's conclusion that the contract was ambiguous, although it clearly states that it does "not agree" with

that determination. Rather, it argues that Plumb Line waived the defense of ambiguity because Plumb Line—according to Local Pages' take on the testimony—admitted to not reading the Advertising Contract.

¶20 A district court is justified in granting a motion for judgment as a matter of law "only if, examining all evidence in a light most favorable to the non-moving party, there is no competent evidence that would support a verdict in the non-moving party's favor." *Sheppard v. Geneva Rock*, 2021 UT 31, ¶ 24, 493 P.3d 632 (cleaned up). Given the evidence presented, we see no error in the district court's denial of Local Pages' motion for judgment as a matter of law.

¶21 First, as to the ramifications of Plumb Line allegedly not reading the Advertising Contract, it is well-established that common law defenses, such as ambiguity, fraud, and mistake, remain available to a party who fails to read a contract. While a party who fails to read a contract may still be bound by its terms, a party who has not read a contract may still argue about the implications of ambiguous terms if an integrated contract is ambiguous or, as here, a collection of documents read together is open to multiple interpretations. For example, in *John Call Engineering, Inc. v. Manti City Corp.*, 743 P.2d 1205 (Utah 1987), our supreme court said that "[a] party may not sign a contract and thereafter assert . . . failure to read the contract as a defense." *Id.* at 1208. But the *John Call* court was quick to point out that a party "is ordinarily bound" *provided that* "the contract is plain and unequivocal in its terms." *Id.* (cleaned up). And our supreme court has pointed out that a failure to read a contract does not deprive a party of common law remedies: "*In the absence of fraud or mistake* [a party] will be bound by all [of a contract's] provisions, even though [the party] has not read the agreement and does not know its contents." *Semenov v. Hill*, 1999 UT 58, ¶ 12, 982 P.2d 578 (cleaned up). Here, there is no doubt that the terms of the contract were equivocal, leading to ambiguity about whether the contract

was for a five-year term or was an option contract with terms good for up to five years. Accordingly, Local Pages' assertion, insofar as it is true, that Plumb Line did not read the Advertising Contract is largely immaterial to a determination of ambiguity.[4]

¶22    Second, Local Pages concedes that in denying the motion for summary judgment, the district court "determined that the contract as formed included all of the language found in (a) the Advertising Contract . . . , (b) the language of [the April 17 Email] enclosing the Advertising Contract . . . , and (c) [the April 24 Email]." To be fair, Local Pages does not—as it explicitly stated at oral argument—agree that the contract consisted of these three elements. But it does acknowledge that the district court made this very determination—a determination that Local Pages has not challenged on appeal. Indeed, the scope of Local Pages' appeal is limited to the contention that the district court erred in denying its motion for judgment as a matter of law. Local Pages makes no attempt in its briefing on appeal to attack the earlier denial of summary judgment in which the court concluded that the contract consisted of the three parts—a conclusion that led to the ambiguity determination. And in its articulation of the issues

---

4. For the sake of addressing Local Pages' argument, we assume that the evidence showed that the principal or agents of Plumb Line did not read the attached Advertising Contract; however, the record does not support this assertion. Plumb Line's service manager admitted only that he did not "recall whether [he] reviewed the printout" of the Advertising Contract with Plumb Line's owner, instead saying that he "believe[d]" that they "just reviewed" the April 17 Email together. At most, this testimony addresses the service manager's recollection of reviewing the Advertising Contract with Plumb Line's owner. In no way did the service manager admit that he did not read the Advertising Contract. To the contrary, he testified that he likely printed out the Advertising Contract when he asked Owner for clarification about billing codes featured on the Advertising Contract.

of appeal, Local Pages explicitly states that the district court erred in denying its motion for the judgment as a matter of law, making no mention of the denial of summary judgment.[5]

¶23    And while Local Pages has not challenged the district court's summary judgment determination, we nevertheless see no error in the court's conclusion that the contract was ambiguous. "Under well-accepted rules of contract interpretation, we look to the language of the contract to determine its meaning and the intent of the contracting parties. We also consider each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none." *McNeil Eng'g & Land Surveying,*

---

5. To the extent that Local Pages contends it is challenging the denial of summary judgment, the issue is inadequately briefed. While it is true that when "appealing from an entire final judgment . . . , it is not necessary to specify each interlocutory order of which the appellant seeks review," *Scudder v. Kennecott Copper Corp.*, 886 P.2d 48, 50 (Utah 1994), it is equally true that an appellant is required to at least identify the aspects of a summary judgment decision with which it takes exception. As we read Local Pages' brief, nowhere does it address the court's determination on summary judgment that the contract consisted of three parts—a determination that supported the court's conclusion that the contract was ambiguous. The closest Local Pages comes is saying that it "did not agree that the district court had correctly concluded that the '5 Year Agreement' language was ambiguous." So, instead of taking on the court's ambiguity determination, Local Pages' argument is entirely focused on the effect of Plumb Line's alleged failure to read the Advertising Contract. We decline to address arguments made only in passing. *See* Utah R. App. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal."); *see also Smith v. Four Corners Mental Health Center, Inc.*, 2003 UT 23, ¶ 46, 70 P.3d 904.

*LLC v. Bennett,* 2011 UT App 423, ¶ 8, 268 P.3d 854 (cleaned up). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *WebBank v. American Gen. Annuity Service Corp.,* 2002 UT 88, ¶ 19, 54 P.3d 1139 (cleaned up). "Only if the language of the contract is ambiguous will we consider extrinsic evidence of the parties' intent." *Café Rio, Inc. v. Larkin-Gifford-Overton, LLC,* 2009 UT 27, ¶ 25, 207 P.3d 1235. And "a contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Daines v. Vincent,* 2008 UT 51, ¶ 25, 190 P.3d 1269 (cleaned up).

¶24    Admittedly, if the contract had consisted of only the April 17 Email and the April 24 Email, there would have likely been no ambiguity. But in that scenario, the lack of ambiguity would have cut in the opposite direction from what Local Pages advocates. Recall the words of the April 17 Email: "I will go [$]1499 a month and leave all ads inside the same as last year. I will honor this deal for up to 5 years with no increase for you also." Two characteristics stand out. First, Owner says that the deal will be "the same as last year," which, as noted, had been for one year. Second, Owner said that he would "honor this deal for *up to* five years." (Emphasis added.) We can see few other ways to understand the "up to" portion of the proposal to mean anything other than an offer for a five-year option agreement that Plumb Line had the right to renew each year—especially considering that the parties signed a one-year contract in the previous year. In other words, here, the only reasonable interpretation of "up to" is that Plumb Line could exit the relationship if it wished to before five years passed.

¶25    The ambiguity in the contract crept in not from the April 17 Email but from the attached Advertising Contract—and more specifically from the single, handwritten line that said, "5 year

agreement at same rate each year." In isolation, a natural reading of this line is that the contract was for a fixed term of five years. But that is not what happened here because this line was not to be—indeed could not have been—read in isolation. As the district court determined on summary judgment, the contract did not consist of this one line. Rather, it included the language of the April 17 Email and the other language in the Advertising Contract. As we have already noted, the "up to 5 years" language of the April 17 Email certainly implies that the contract was renewable year-to-year, especially when considered in the context of the previous line that said the deal was "the same as last year."

¶26 Moreover, the handwritten note doesn't just clash with the April 17 Email; it also conflicts with the multiple references to twelve months and to a single issue (namely, Issue 14) in the Advertising Contract itself. And given that the contract offer consisted of the April 17 Email and the Advertising Contract, Local Pages does not enjoy the luxury of reading "5 year agreement at same rate each year" in isolation from everything else that created the contract. Instead, this phrase must be read "in relation to all of the [contract provisions], with a view toward giving effect to all and ignoring none." *McNeil Eng'g*, 2011 UT App 423, ¶ 8 (cleaned up). And when read in the context of the entirety of the contract, this provision is ambiguous because "it is capable of more than one reasonable interpretation," *Daines*, 2008 UT 51, ¶ 25 (cleaned up), created by the inconsistent manner in which the length of the contractual-agreement term is described in the April 17 Email, the references to twelve payments in the Advertising Contract, and the handwritten notation.

¶27 Here, the court's denial of Local Pages' motion for judgment as a matter of law rested on a solid factual foundation. These facts established that the terms of the contract were inherently equivocal and susceptible to two mutually exclusive interpretations: a five-year fixed term versus a five-year option. Given this factual landscape, we see no error in the court's denial

of Local Pages' motion because there was ample evidence to support a verdict in Plumb Line's favor.

## II. Extrinsic Evidence

¶28    Local Pages also asserts that the district court erred in allowing the limited testimony of Customer as extrinsic evidence to resolve the ambiguity created by the handwritten note. "A trial court has broad discretion in deciding whether evidence is relevant, and we review a trial court's relevance determination for abuse of discretion." *Schreib v. Whitmer*, 2016 UT App 61, ¶ 15, 370 P.3d 955 (cleaned up). Local Pages argues that the "only thing relevant" to the meaning of the note "was the understanding of the parties to the negotiations." Because Customer was a party to a different negotiation, Local Pages contends that Customer "could not provide testimony that would help the jury decide what the phrase at issue meant to [Plumb Line] and Local Pages."

¶29    In making this argument, Local Pages ignores the very limited and specific scope of Customer's testimony. In no way was he asked to testify about the meaning of the handwritten phrase in the Advertising Contract. Rather, as the district court made abundantly clear, Customer's testimony was strictly limited to showing Customer *his contract* with Local Pages, asking him whether *he and Owner* discussed the handwritten language of that contract, and asking him what Owner told him about that language.

¶30    "Where there are two reasonable interpretations of a contractual provision, we look to extrinsic evidence." *Brady v. Park*, 2019 UT 16, ¶ 54, 445 P.3d 395 (cleaned up). That is precisely the case here. There were two reasonable interpretations regarding the length of the contract's term, namely, whether it was for a five-year term or an annual term renewable for up to five years. Given this ambiguity, the district court invited "extrinsic evidence bearing on the intentions of the parties to the contract concerning the ambiguity." *Id*. ¶ 65 (cleaned up). This

extrinsic evidence included the testimony of representatives of Local Pages and Plumb Line. And it also included Customer's testimony, which was proper because in the face of contractual ambiguity "a court is not limited to the document itself" but "may look to *all* the attendant circumstances surrounding the execution of the document." *Novell, Inc. v. Canopy Group, Inc.*, 2004 UT App 162, ¶ 21, 92 P.3d 768 (emphasis added). In this context, Customer's testimony was relevant to resolving the ambiguity based on what Owner said about a nearly identical handwritten phrase on a similar phone book advertising contract between Local Pages and one of its customers. Because the court "should . . . consider any credible evidence offered to show the parties' intention," *id.* (cleaned up), the jury properly considered this evidence as addressing Owner's understanding of the similar provision in the other contract. When asked if Owner told him "what he was writing on the contract," Customer responded, "The writing on the contract is what [Owner] said would guarantee I could have the same rate if I renewed my contract." Given the similarity between the two contracts, Customer's testimony thus assisted the jury in determining what Owner meant by including the handwritten note in Plumb Line's contract.

¶31 In sum, we see no abuse of discretion in the court's decision to allow the extrinsic evidence in the form of Customer's testimony to resolve the ambiguity created by Owner's handwritten note on the Advertising Contract.[6]

---

6. Local Pages also complains that Customer's testimony was prejudicial because it caused the jury to "not believe" Owner. At the risk of stating the obvious, we point to the oft repeated principle that making credibility determinations is what a jury does. *See Holland v. Brown*, 394 P.2d 77, 79 (Utah 1964) ("Short of capriciously or arbitrarily rejecting credible evidence when there

(continued…)

### III. Attorney Fees

¶32 Local Pages' final claim is that the district court erred in awarding any attorney fees. In support of this claim, Local Pages asserts that Plumb Line failed to properly categorize its fees because "it did not differentiate between fees that were incurred in pursuing issues unrelated to the contract, fees for motions it had lost or abandoned before filing, fees for transition between law firms, etc."

¶33 The Utah Supreme Court has "mandated that a party seeking fees must allocate its fee request according to its underlying claims." *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998). More specifically,

> the party must categorize the time and fees expended for (1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees. Claims must also be categorized according to the various opposing parties.

*Id.* (cleaned up).

¶34 Here, there was one and only one claim made against Plumb Line: breach of contract. Thus, contractually, Plumb Line was entitled to attorney fees for successfully defending itself against this single claim. *Foote* requires that fees be categorized by claims and by parties. That is precisely what Plumb Line did here. Indeed, it could have scarcely done anything else since there was

---

is no sound reason for doing so, it is the exclusive province of the jury to determine the credibility of witnesses."). Accordingly, we reject Local Pages' prejudice argument.

only one claim involving one other party. Given this litigation landscape, we fail to see how Plumb Line's categorization of its fees was improper or fell short under the standard *Foote* sets down.[7]

¶35 Finally, "it is well-settled that a provision for payment of attorney fees in a contract includes attorney fees incurred by the prevailing party on appeal as well as at trial, if the action is brought to enforce the contract." *Tronson v. Eagar*, 2019 UT App 212, ¶ 39, 457 P.3d 407 (cleaned up). "Having received attorney fees in the underlying action and under the conclusions reached in this opinion," Plumb Line is "entitled to recover reasonable attorney fees incurred on appeal." *See Phillips v. Skabelund*, 2021 UT App 2, ¶ 69, 482 P.3d 237. Accordingly, we grant Plumb Line's "request for fees and costs on appeal and remand for the district court to calculate the award." *See Thomas v. Thomas*, 2021 UT App 8, ¶ 45, 481 P.3d 504.

---

7. Local Pages resists this conclusion by citing *Dale K. Barker Co. PC CPA Profit Sharing Plan v. Turner*, 2021 UT App 119, 500 P.3d 940, *cert. denied*, 509 P.3d 768 (Utah 2022), for the assertion that the district court abused its discretion in awarding "any fees" to Plumb Line. Local Pages misreads *Dale K. Barker*, making its reliance on the case misplaced. *Dale K. Barker* is about a party seeking fees for a discrete *singular* item on which it did not fully prevail. *Id.* ¶ 40. *Dale K. Barker* is not about what Local Pages asserts on appeal: that the failure to categorize its fees between pretrial motions it won and lost precludes an award of *any* fees to a party who prevails on a single claim against a single party. At most, *Dale K. Barker* supports the proposition that an award of fees may be reduced by amounts related to an unsuccessful motion. As such, *Dale K. Barker* is inapposite here.

CONCLUSION

¶36     All of Local Pages' claims fail. The district court did not err in denying Local Pages' motion for judgment as a matter of law. The district court did not exceed its discretion in allowing the limited testimony of Customer as extrinsic evidence to resolve the ambiguity inherent in the contract. Finally, the district court did not err in awarding attorney fees, and we remand the matter to the district court to determine the amount of reasonable attorney fees incurred by Plumb Line on appeal.

¶37     Affirmed.

_____