*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 47**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

TROY GARDNER,
*Appellee,*

*v.*

TYLER NORMAN,
*Appellant.*

No. 20240344
Heard April 9, 2025
Filed October 30, 2025

On Direct Appeal

Third District Court, Salt Lake County
The Honorable Keith A. Kelly
No. 220906066

Attorneys[*]:

Karra J. Porter, Michael N. Driggs, Salt Lake City, for appellee

Samantha J. Slark, Salt Lake City, for appellant

---

[*] Additional attorneys for *amici curiae*, in support of appellant: Freyja Johnson, Rachel Phillips Ainscough, Bountiful, for International Municipal Lawyers Association; Darcy M. Goddard, Salt Lake City, for Utah Counties Indemnity Pool; Troy L. Booher, Salt Lake City, for State Farm Mutual Automobile Insurance Company; S. Spencer Brown, Scarlet R. Smith, Salt Lake City, for Prime Insurance Company; Heidi G. Goebel, Salt Lake City, Cary Silverman, Mark A. Behrens, Wash., D.C., for National Federation of Independent Business Small Business Legal Center, Inc., National Association of Manufacturers, American Tort Reform Association, Coalition for Litigation Justice, Inc., American Property Casualty Insurance Association, National Association of Mutual Insurance Companies, American Trucking Associations, (continued . . .)

JUSTICE HAGEN authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, and JUSTICE POHLMAN joined.

—————————

JUSTICE HAGEN, opinion of the Court:

## INTRODUCTION

¶1 This opinion resolves a recurring issue in personal injury cases in which a plaintiff seeks to recover past medical expenses. If the plaintiff carried health insurance, those medical expenses may have already been paid, at least in part, by the insurance company. But evidence that the expenses were covered by insurance is generally inadmissible because a defendant's liability for damages cannot be reduced based on compensation the plaintiff received from a third party. This is known as the collateral source rule.

¶2 The amount that must be paid to satisfy an insured patient's medical bill varies based on the contractual arrangement between the health insurance company and the healthcare provider. The amount that providers agree to accept as full payment for services rendered to insured patients is often significantly less than the gross charge. We are asked to decide whether the collateral source rule requires exclusion of that negotiated charge.

¶3 This case arises from an automobile collision between Troy Gardner and Tyler Norman. Gardner brought a negligence claim against Norman in which he sought special damages for his past medical expenses. Both parties filed motions in limine to determine the admissibility of the negotiated charge Gardner's insurance paid the hospital to satisfy his medical bills. The district court decided that, under the collateral source rule, the negotiated charge paid by Gardner's insurance must be excluded. The district court ultimately awarded Gardner special damages for his past medical care based on the hospital's gross charges. Norman appealed, and

—————————————————————————————

Inc., and Utah Trucking Association; Nathanael J. Mitchell, Salt Lake City, for Utah Defense Lawyers Association; Peggy E. Stone, Joshua D. Davidson, J. Clifford Petersen, Asst. Solics. Gen., Salt Lake City, for Utah Division of Risk Management.

Additional attorneys for *amicus curiae*, in support of appellee: Peter W. Summerill, South Jordan, for Utah Association for Justice.

we elected to retain this case because it presents an issue of first impression before this court.

¶4    We hold that the collateral source rule does not require exclusion of the negotiated charges for Gardner's medical care. The gross charge does not reflect Gardner's past medical expenses because neither he nor his insurance were ever obligated to pay that amount. Because the difference between the gross charge and the negotiated charge was not a benefit to Gardner from a collateral source, the rule does not apply. Accordingly, we vacate the special damages award and remand for a new bench trial on that issue.

## BACKGROUND

¶5    Norman was driving a marked Salt Lake City police vehicle when he rear-ended Gardner's car, which was stopped in traffic on a freeway off-ramp. As a result of the collision, Gardner went to the emergency room and saw an eye doctor. The hospital billed Gardner $7,175.77 for the emergency room visit. But as required by an existing contract between Gardner's health insurance and the hospital, the amount his insurance paid to fully satisfy the bill was $4,395.75—just under a forty percent reduction of the initial charge. For Gardner's eye exam, the amount billed by the hospital and paid by his insurance was $92.

¶6    Gardner later brought a negligence claim against Norman, seeking special damages for his past medical expenses and general damages for pain and suffering.[1] Gardner sought $7,267.77 in special damages, representing the gross charges listed on the initial bill he received from the hospital.

### *Pretrial Rulings*

¶7    Both parties filed motions in limine to determine what evidence the fact finder could consider in determining Gardner's medical expenses. In his motion, Norman moved to exclude all evidence of the gross charge, which he refers to as the "chargemaster rate."

---

[1] Gardner also named Norman's employer, Salt Lake City, as a defendant. Prior to trial, the court granted the City's motion for summary judgment. Because Norman was not acting within the scope of his employment, the court determined that the City could not be held liable for the accident. We therefore refer to Norman as the only defendant even though the City participated in the litigation prior to its dismissal.

¶8 Federal law requires hospitals to publish "a list of the hospital's standard charges for items and services provided by the hospital." 45 C.F.R. § 180.10. "Standard charge means the regular rate established by the hospital for an item or service provided to a specific group of paying patients," including (1) the "[g]ross charge," (2) the "[d]iscounted cash price" for individuals who self-pay, (3) the "[p]ayer-specific negotiated charge," which is the amount a hospital has negotiated with a third party, and (4) the "[d]e-identified maximum" and "[d]e-identified minimum" representing the highest and lowest charge a hospital has negotiated with all third-party payers. *Id.* §§ 180.20, 180.50(b). The gross charge "means the charge for an individual item or service that is reflected on a hospital's chargemaster, absent any discounts." *Id.* § 180.20. "Payer-specific negotiated charge[s]" include those that insurance companies have negotiated to pay. *Id.* § 180.50(b). Insurance companies regularly contract with healthcare providers in advance to set the negotiated charge for all available services. *See Tschaggeny v. Milbank Ins.*, 2007 UT 37, ¶ 10, 163 P.3d 615 (explaining that it is "typical in the industry," as part of an existing contractual arrangement, for a "health insurer [to have] negotiated a lower rate for health care services for its policy holders").

¶9 Norman argued in his motion that the district court should exclude evidence of the gross charge for Gardner's medical care or, in the alternative, allow evidence of both the gross charge and the negotiated charge Gardner's insurance actually paid to satisfy the bill. In response, Gardner argued that exclusion of the gross charge listed on his initial bill "based on indemnification from [his] private health insurance" would "directly violate[] Utah's adoption of the collateral source rule." He contended that limiting his ability to present "evidence of the amount charged" as a direct result of the car crash would hinder his ability "to show that the value of medical services received was reasonable and necessary."

¶10 The district court denied Norman's motion, ruling that "the insurance company payment and discount that were received as a benefit to the plaintiff fit under the collateral source doctrine." The court reasoned that alleged tortfeasors are not entitled to the benefit of discounts negotiated by a plaintiff's insurance because a tortfeasor who denies liability (1) "has not accepted responsibility for payment," (2) "has not negotiated for discounts," (3) "has not voluntarily accepted payment responsibility at the time of the service," and (4) "delays payment until after a lawsuit is filed."

Such tortfeasors, the court continued, "should not be entitled to the same discounts available to patients or their insurers who voluntarily agree to pay at the time medical services are rendered."

¶11 Following the court's ruling, the parties proceeded with disclosure of trial exhibits. Upon receipt of the exhibits, Gardner moved to exclude any evidence or mention of the negotiated charges he or his insurance actually paid for medical services as opposed to the gross charges originally billed. Gardner argued that the negotiated charges were inadmissible under the collateral source rule. Norman countered that evidence of the negotiated amount "doesn't violate the collateral source rule because it's not seeking to reduce [damages] by the fact the third party had paid [them], just trying to introduce [the negotiated rate] as relevant evidence of the amount that is reasonable for the services." The district court granted Gardner's motion ruling that evidence of "insurance discounts" would be excluded from the trial.

*Bench Trial*

¶12 During a bench trial, Norman's counsel attempted to question Gardner about the billing for his emergency room visit. The evidence showed that the hospital billed Gardner's emergency room visit at two different levels of service—level four and level five. The evidence also showed that Gardner's insurance denied coverage of the level five bill for $1,208—an amount included in the total $7,267.77 Gardner sought.[2]

¶13 Norman's counsel asked Gardner on cross-examination if he ever questioned the hospital about why it billed the emergency room visit at two different levels. Gardner said he did not. Norman's counsel then asked whether the hospital ever withdrew the bill. Gardner's counsel objected that the question called for speculation, which the district court overruled. Gardner responded that he knew "they made adjustments later." Norman's counsel asked whether Gardner knew what those adjustments were. Gardner's counsel moved to strike, citing the collateral source rule. The court sustained the objection.

---

[2] Norman contends that this denial included a comment: "[M]edical records do not support level 5. Please re-bill." The record citation Norman provides for this comment only shows a denial with no comment. But Gardner has not disputed the factual accuracy of Norman's representation.

¶14 At the conclusion of the bench trial, the court determined that Norman breached his duty of care and proximately caused Gardner's injuries. In addition to general damages, the court awarded Gardner special damages for past medical expenses in the amount of $7,267.77—the gross charge initially billed by the hospital. Because Norman had already reimbursed Gardner's personal injury protection car insurance for $3,000, the court deducted that amount from the special damages award, bringing the total to $4,267.77.

¶15 Norman appealed.

## ISSUE AND STANDARD OF REVIEW

¶16 Norman argues that the district court erred when it relied on the collateral source rule to allow Gardner to introduce the gross charge for his medical care, to prevent Norman from introducing the negotiated charge, and to prevent Norman from questioning Gardner about whether a bill was withdrawn or reduced due to a billing error. While we review a district court's decision to admit evidence for abuse of discretion, we review for correctness the "legal questions underlying the admissibility of evidence"—in this case the applicability of the collateral source rule. *State v. Griffin*, 2016 UT 33, ¶ 14, 384 P.3d 186 (cleaned up); *see also Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 35, 96 P.3d 893 ("Whether the district court was correct in its application of the collateral source rule is a question of law that we review for correctness, without deference to the district court's conclusions.").

## ANALYSIS

¶17 The question presented is whether the collateral source rule requires courts to exclude evidence of the negotiated charge for an insured plaintiff's past medical care. This is a matter of first impression in Utah. *See Tschaggeny v. Milbank Ins.*, 2007 UT 37, ¶ 24, 163 P.3d 615 (noting "that the application of the collateral source rule to medical bill write-offs is a matter of first impression in Utah" but declining to reach the unpreserved issue). To answer this question, we begin with basic principles governing special damages as well as an overview of the collateral source rule. We next examine how other courts have analyzed the collateral source rule in this context. We then conclude that the collateral source rule does not operate to exclude evidence of the negotiated rates paid for an insured plaintiff's medical care.

### 1. Special Damages

¶18 When a plaintiff suffers harm from a defendant's tortious actions, "compensatory damages seek to place the plaintiff in the same position [the plaintiff] would have occupied had the tort not been committed." *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 37 n.10, 289 P.3d 369 (cleaned up). Special damages, a form of compensatory damages also known as specific or economic damages, account for "harm that is considered more finite" and "measureable." *Sheppard v. Geneva Rock*, 2021 UT 31, ¶ 17 n.5, 493 P.3d 632 (cleaned up). Such damages are limited to "hard amounts" incurred by the plaintiff "that are subject to careful calculation such as the cost of medical and other necessary care." *Id.* (cleaned up); *see also Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 976 (Utah 1993) (explaining that plaintiffs may recover medical expenses "incur[red] as a result of a demonstrated injury" (cleaned up)).

¶19 To recover "compensation for medical expenses in a tort action," a plaintiff must prove that the amount incurred was "reasonable and necessary." *Hansen*, 858 P.2d at 981; *see also Wilson*, 2012 UT 43, ¶ 37 ("Upon proof of liability, a plaintiff may recover medical expenses that are reasonable and necessary."); *Simmons v. Wilkin*, 15 P.2d 321, 323 (Utah 1932) (explaining that special damages must "be reasonable and necessary as a result of the accident"). Specifically, "evidence is required to show that the medical expenses accurately reflect the necessary treatment that resulted from the injur[y] and that the charges are reasonable." *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 35, 17 P.3d 1110. The reasonableness requirement means that, even if the treatment was necessary, recovery is limited to "the reasonable value of the services rather than the amount paid or charged." RESTATEMENT (SECOND) OF TORTS § 911 cmt. h (A.L.I. 1979).

¶20 But if "the injured person paid *less* than the exchange rate, he can recover no more than the amount paid." *Id.* (emphasis added). Because special damages compensate the plaintiff for the concrete economic harm suffered as a result of the tortfeasor's actions, *Sheppard*, 2021 UT 31, ¶ 17 n.5, it is not enough to prove that certain expenses *would have been* reasonable had they been incurred. In other words, only "reasonable and necessary expenses for medical care and other related expenses incurred" are compensable as special damages. *Cf.* MODEL UTAH JURY INSTRUCTIONS 2d CV2003 & CV2005, https://legacy.utcourts.gov/muji/?cat=1&subcat=20 (last visited Oct. 24, 2025) (defining economic damages).

### 2. The Collateral Source Rule

¶21   When a third party covers all or part of a plaintiff's medical expenses, the collateral source rule is implicated.[3] Under this rule, wrongdoers are "not entitled to have damages, for which [they are] liable, reduced by proof that the plaintiff has received or will receive compensation or indemnity for the loss from an independent collateral source." *Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 P.2d 337, 345 (Utah 1997) (cleaned up). In its application, the collateral source rule has both an evidentiary and a damages aspect.

¶22   The evidentiary aspect "precludes both explicit reference and methodical allusion to collateral source benefits." *Wilson*, 2012 UT 43, ¶ 2. "It has long been recognized that evidence of collateral source benefits involves a substantial likelihood of prejudicial impact." *Id.* ¶ 47 (cleaned up). That prejudice may occur in two ways. First, evidence of payment from a collateral source suggests that a plaintiff is already receiving any necessary care, which may

---

[3] The collateral source rule is a common law concept that can be altered by statute. In some states, the legislature has modified or abolished the collateral source rule. *See, e.g.*, *Gulfstream Park Racing Ass'n v. Volin*, 326 So. 3d 1124, 1126 (Fla. Dist. Ct. App. 2021) (Florida statute "requires a court to setoff certain payments from collateral sources in personal injury cases"); *Swanson v. Brewster*, 784 N.W.2d 264, 269 (Minn. 2010) (Minnesota "statute changed the rule on collateral sources and damage awards, essentially providing that a plaintiff cannot recover money damages from the defendant if the plaintiff has already received compensation from certain third parties or entities"); *Furlong v. Merriman*, No. HHBCV044000416S, 2006 WL 1461112, at \*7 (Conn. Super. Ct. May 4, 2006) (Connecticut statute requires the court to "reduce the amount of an economic damages award by an amount equal to the total" paid by a collateral source (cleaned up)).

The Utah Legislature has altered this common law rule only for medical malpractice claims. *See generally* UTAH CODE § 78B-3-405. When a plaintiff receives damages in a malpractice action, "the court shall reduce the amount of the award by the total of all amounts paid to the plaintiff from all collateral sources." *Id.* § 78B-3-405(1). But where a collateral source has a subrogation right or the collateral payment was not included in the damages award, the court does not reduce the damages. *Id.*

lead the jury to "believe[] that the outcome of the trial is immaterial to the party benefitting from the collateral source." *Id.* (cleaned up). Second, because many jurors "do not understand the concept of subrogation rights, they will erroneously conclude that the plaintiff is seeking a windfall." *Id.* This misunderstanding is "highly prejudicial because the jury will believe that the plaintiff has already been fully compensated and is trying to obtain a double recovery," thereby tainting the jury's decision-making process. *Id.* (cleaned up).

¶23 The damages aspect prevents a plaintiff's recovery from being offset by any payments provided by an independent collateral source. *See Gibbs M. Smith, Inc.*, 949 P.2d at 345; *Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 37, 96 P.3d 893. Put simply, "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." RESTATEMENT (SECOND) OF TORTS § 920A(2) (A.L.I. 1979). This means that the plaintiff may recover medical expenses already paid by the plaintiff's insurance even when "it results in a windfall to the plaintiff based on the premise that the plaintiff victim, rather than the defendant tortfeasor, should be the beneficiary of any windfall." *Mahana*, 2004 UT 59, ¶ 37. The rule is also intended to "encourage[] the maintenance of insurance by assuring that a plaintiff's payments from a collateral source will not be reduced by a subsequent judgment." *Wilson*, 2012 UT 43, ¶ 31 (cleaned up).

### 3. Application to the Negotiated Charges Context

¶24 In this appeal, Norman argues that the collateral source rule "does not apply to preclude evidence of the amount" of the negotiated charge "or to entitle a plaintiff to recover more than the damage actually caused by the defendant." He contends that the collateral source rule instead is "limited to preventing evidence of the source of the payment, *not the amount paid*." In Norman's view, "admitting evidence of rates not charged to or paid by [a plaintiff] or his insurer and excluding the amounts actually charged and paid is contrary to bedrock principles of compensatory damages and tort recovery, which aim to compensate only for the harm caused."

¶25 In contrast, Gardner argues that "[c]onsistent with the collateral source rule," only the gross charge initially billed to a plaintiff is "admissible to prove the reasonable and necessary amount of medical expenses." He contends that this is consistent

with the purpose of the collateral source rule: "to prevent a windfall to the tortfeasor, ensuring that the plaintiff—not the wrongdoer—benefits from" a plaintiff's "efforts to secure discounted medical bills while avoiding full responsibility for payment of the claim." Gardner asserts that "evidence of the amount paid or accepted by insurance" is evidence of a benefit from a collateral source and "does not reflect the true costs and efforts associated with obtaining and maintaining coverage, including paying premiums and dealing with coverage disputes."

¶26 The debate between these two parties is one that has played out in other cases across the country with states reaching various conclusions. Among the states that have allowed consideration of the negotiated charge, several approaches have emerged. For a number of states, the outcome has been dictated by state statutes modifying the collateral source rule.[4] Other states allow the admission of both the gross rate and the negotiated rate as evidence of the reasonable value of medical care.[5] Yet a third approach precludes recovery based on the gross charge by either excluding evidence of the gross charge or reducing the damages award post-verdict.[6]

---

[4] *See, e.g., Weston v. AKHappytime, LLC*, 445 P.3d 1015, 1019 (Alaska 2019); *Meek v. Mont. Eighth Jud. Dist. Ct.*, 349 P.3d 493, 496 (Mont. 2015); *Haygood v. De Escabedo*, 356 S.W.3d 390, 395–99 (Tex. 2011); *Swanson*, 784 N.W.2d at 269–70, 282; *Deck v. Teasley*, 322 S.W.3d 536, 538–42 (Mo. 2010) (en banc); *Crocker v. Grammer*, 87 So. 3d 1190, 1193 (Ala. Civ. App. 2011); *Furlong*, 2006 WL 1461112, at *7–8, *11.

[5] *See, e.g., Martinez v. Milburn Enters., Inc.*, 233 P.3d 205, 222–23 (Kan. 2010); *Law v. Griffith*, 930 N.E.2d 126, 135–36 (Mass. 2010); *Stanley v. Walker*, 906 N.E.2d 852, 858 (Ind. 2009); *Robinson v. Bates*, 857 N.E.2d 1195, 1200–01 (Ohio 2006); *Barday v. Donnelly*, No. CV-04-508, 2006 WL 381876, at *2–3 (Me. Super. Ct. Jan. 27, 2006).

[6] *See, e.g., Weston*, 445 P.3d at 1019; *Haygood*, 356 S.W.3d at 395–99; *Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130, 1139–40 (Cal. 2011); *Swanson*, 784 N.W.2d at 269–70, 282; *Sliker v. Nat'l Feeding Sys., Inc.*, No. 282 CD 2010, 2015 WL 13779690, at *8 (Pa. Ct. Com. Pl. Oct. 19, 2015); *Furlong*, 2006 WL 1461112, at *7–8, *11; *Wildner v. Wendorff*, No. 05-1998, 2006 WL 2265453, at *4 (Iowa Ct. App. Aug. 9, 2006).

¶27 The third approach is best exemplified by *Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130 (Cal. 2011). In that case, the California Supreme Court considered "whether restricting recovery to amounts actually paid by a plaintiff or on his or her behalf contravenes the collateral source rule." *Id.* at 1137. As in our case, the defendant moved "to exclude evidence of medical bills that neither [the] plaintiff nor her health insurer . . . had paid." *Id.* at 1133. The defendant asserted that the record showed that "significant amounts" of the plaintiff's past medical bills "had been adjusted downward before payment pursuant to [prior] agreements between" the healthcare providers and her insurance. *Id.* at 1133–34.

¶28 The court held "that a plaintiff may recover as economic damages *no more* than the reasonable value of the medical services received and is not entitled to recover the reasonable value if his or her actual loss was less." *Id.* at 1137. The court explained that "[t]o be recoverable, a medical expense must be both incurred *and* reasonable." *Id.* In the court's view, the burden to prove that the plaintiff's special damages reflect the "reasonable value" of the services incurred limits "recovery to reasonable expenditures" but does "not expand[] recovery beyond the plaintiff's actual loss or liability." *Id.* In other words, the reasonable value of medical care in this context "is a term of limitation, not of aggrandizement." *Id.* at 1136 (cleaned up).

¶29 Turning to the case before it, the court concluded that the "plaintiff did not incur liability for her providers' full bills, because at the time the charges were incurred the providers had already agreed on a different price schedule for" patients covered by the plaintiff's insurance. *Id.* at 1143. And because the plaintiff "never incurred the full bill," the court went on, the plaintiff "could not recover [that amount] in damages for economic loss," making the collateral source rule "inapplicable." *Id.*

¶30 The court clarified that the rule still "applie[d] with full force" to prevent the deduction of payment made by an independent source "from the *damages which the plaintiff would otherwise collect from the tortfeasor*." *Id.* at 1143–44 (cleaned up). But "the negotiated rate differential [was] not a collateral payment or benefit subject to the collateral source rule." *Id.* at 1144. "Certainly, the collateral source rule should not extend so far as to permit recovery for sums neither the plaintiff nor any collateral source will ever be obligated to pay." *Id.* at 1143 (cleaned up).

¶31 We find the reasoning of the California Supreme Court persuasive. Special damages must reflect the actual loss resulting from the tortfeasor's conduct. Under the collateral source rule, the fact that a third party bore that loss is inadmissible and cannot be used to reduce a plaintiff's recovery. But that rule does not alter the fundamental principle that special damages are limited to the actual loss resulting from the injury.

¶32 Here, Gardner never incurred the gross charges listed on the initial hospital bill. Before he was injured, Gardner's insurance had entered into a contract with the hospital that set out the authorized amounts that could be charged to insured patients. Because the contracted prices were in place when Gardner sought treatment, his "prospective liability" was limited to those authorized amounts. *See id.* at 1139. As a result, Gardner "cannot meaningfully be said" to have ever "incurred the full charges." *Id.* Even if the gross charges reflect a reasonable cost of necessary treatment resulting from the injury, they do not represent the cost of the medical services that Gardner received, which was limited to the preexisting negotiated charges.

¶33 Gardner argues that such a determination violates the public policy underlying the collateral source rule by awarding a windfall to tortfeasors. *See Wilson*, 2012 UT 43, ¶ 31 ("[P]ublic policy favors giving the plaintiff a double recovery rather than allowing a wrongdoer to enjoy reduced liability simply because the plaintiff received compensation from an independent source." (cleaned up)). Norman, on the other hand, argues that to rule otherwise violates "the fundamental tort law purpose of placing" plaintiffs in the same position they would have occupied but for the tort. *See Mahana*, 2004 UT 59, ¶ 26 ("To the extent possible, the fundamental purpose of compensatory damages is to place the plaintiff in the same position he would have occupied had the tort not been committed."). We agree with Norman.

¶34 Limiting an insured plaintiff's recovery to the negotiated charge does not create a windfall for tortfeasors. The collateral source rule prevents a plaintiff's recovery from being "reduced by proof that the plaintiff has received or will receive compensation or indemnity for the loss from an independent collateral source." *Gibbs M. Smith, Inc.*, 949 P.2d at 345 (cleaned up). It prevents a tortfeasor from obtaining a windfall where collateral source benefits have mitigated the plaintiff's out-of-pocket losses. *See generally Wilson*, 2012 UT 43. But the difference between the gross

charge and the negotiated charge is "not a 'benefit' under the collateral-source rule because it is not a payment." *Robinson v. Bates*, 857 N.E.2d 1195, 1200–01 (Ohio 2006). Only "the amount a plaintiff's health insurer actually pays to the health care provider is a benefit from a collateral source." *Martinez v. Milburn Enters., Inc.*, 233 P.3d 205, 213 (Kan. 2010).

¶35 Given that no one pays the difference between the gross charge and the negotiated charge, admitting evidence of the predetermined reduction "does not violate the purpose behind the collateral-source rule." *Robinson*, 857 N.E.2d at 1200. The tortfeasor does "not obtain a credit because of payments made by a third party on behalf of the plaintiff," which is what the collateral source rule prevents. *Id.* The tortfeasor still faces the burden of paying for the economic loss proximately caused by the tortfeasor's negligence. But the difference between the gross charge and the negotiated charge results from the preexisting contractual arrangement between the insurer and the healthcare provider. It is not a loss caused by the tortfeasor's conduct.

¶36 If special damages were based on the gross charge, it would place the plaintiff "in a better financial position than before the tort was committed." *Howell*, 257 P.3d at 1136. In limited situations, such a windfall to the plaintiff is permitted by the collateral source rule. If the collateral source lacked subrogation rights, for instance, the rule contemplates that "the plaintiff victim, rather than the defendant tortfeasor, should be the beneficiary of any windfall." *Mahana*, 2004 UT 59, ¶ 37. But that does not allow the plaintiff to recover more than the actual loss caused by the tortfeasor's conduct as special damages.

¶37 Gardner also argues that it would be unfair to allow a tortfeasor to benefit from the plaintiff's efforts to maintain health insurance when the tortfeasor's liability to an otherwise identical plaintiff might have been greater based merely on insurance status. We recognize that medical billing "depends, to a significant extent, on the identity of the payer." *Howell*, 257 P.3d at 1142. But "one who injures another takes him as he is." *Harris v. ShopKo Stores, Inc.*, 2013 UT 34, ¶ 23, 308 P.3d 449 (cleaned up). This will often mean that the same tortious conduct might result in vastly different damage awards based on the identity and personal characteristics of the plaintiff. It is simply the luck of the draw that a defendant who injured an insured plaintiff might be required to pay a lower damages award for past medical expenses because of the

preexisting contract between the plaintiff's insurer and the medical providers.[7]

¶38 In holding that the negotiated charge for past medical expenses is the proper measure of special damages, we emphasize that our holding does not modify the collateral source rule. Under that rule, evidence that an insurer paid any portion of the medical costs a plaintiff incurred is inadmissible. *See Wilson*, 2012 UT 43, ¶ 2. Similarly, a plaintiff's recovery cannot be reduced by the amounts paid or reimbursed through health insurance, except in medical malpractice cases as provided by statute. *See supra* ¶ 21 n.3. To borrow the California Supreme Court's language in *Howell*, "we merely conclude [that] the negotiated rate differential — the discount medical providers offer the insurer — is not a benefit provided to the plaintiff in compensation for his or her injuries and therefore does not come within the rule." 257 P.3d at 1145. Both the evidentiary and damages aspects of the collateral source rule remain in full effect, except where abrogated by statute. But that rule does not allow a plaintiff to recover more than the amount actually incurred for past medical treatment.

¶39 Although special damages must be based on the costs the plaintiff actually incurred, we do not go so far as to hold that evidence of gross charges is never admissible. Where the reasonableness of the negotiated charge is in dispute, for instance, the gross charge might be relevant to a fact at issue, *see* UTAH R. EVID. 401, although the risk of prejudice might substantially outweigh the probative value of that evidence, *id.* R. 403, especially if its admission risks violating the collateral source rule by

---

[7] We also recognize that the disparity between an insured and uninsured plaintiff may not be as great as Gardner suggests. As with insured individuals, predetermined discounted rates exist for those who are uninsured. By way of example, the hospital where Gardner received care has posted rates showing that an uninsured individual receiving the same treatment as Gardner would receive about a twenty-five percent discount. *See Price Transparency*, INTERMOUNTAIN HEALTH, https://intermountainhealthcare.org/locations/intermountain-medical-center/about/price-transparency (last visited Oct. 24, 2025). The adjusted charge for an uninsured patient would be greater than the negotiated charge Gardner incurred, but in both cases, the gross charge would not reflect the medical expenses they each incurred, regardless of their insurance status.

revealing that the cost was covered, in whole or in part, by insurance. And we express no opinion on the "relevance or admissibility" of this evidence "on other issues, such as noneconomic damages or future medical expenses." *Howell*, 257 P.3d at 1146.

¶40 Here, the district court excluded evidence of the negotiated charge and used the gross charges to calculate the special damages award, based on its understanding that the collateral source rule required that result. But while the collateral source rule prohibits evidence that Gardner's medical costs were paid by his insurance, it does not allow Gardner to recover special damages for costs he has not and never will incur. We therefore vacate the district court's award of special damages and remand for a new trial on that issue.

## CONCLUSION

¶41 Under the collateral source rule, the fact that the negotiated charge was paid by a third party is inadmissible and cannot reduce the plaintiff's recovery. But the amount of the negotiated charge reflects the actual loss incurred, which is the measure of special damages. Because the court based the special damages award on the gross charges for which neither Gardner nor his insurance were responsible, we vacate the award and remand.

———————